## J. P. STEMPER vs. H. H. HIGGINS.

### February 14, 1888.

General Elections—Villages not Separate Election Districts.—Villages, under the general village law of 1885, (chapter 145,) do not constitute election districts for state and county elections, separate from the township in which they are situated.

Same—Validity of Separate Election Held in Village.—A general state election for such a village was held in the village, and separate from that held in the township. The village officers acted as officers of the election. No other irregularity and no fraud being suggested, and there being no reason to doubt the good faith of the electors and officers, nor to suppose that the irregularity had affected the result or cast any uncertainty upon it, the vote of the village should not be disregarded.

Same—Contest—Judges' Return — Parol Evidence.—The return of the judges of election is not conclusive in an election contest, and, the ballots not having been so kept that they might not have been changed, the parol evidence of the judges of election as to the result of the ballot as counted and declared at the polls is admissible.

The contestant, Stemper, instituted this proceeding in the district court for Watonwan county, to have it determined that he was elected to the office of sheriff of that county, at the election held in November, 1886. The contest was tried by *Severance, J.*, without a jury, and judgment directed for the contestant, from which the contestee appeals.

The vote, as canvassed by the county canvassing-board was as follows: For H. H. Higgins, 467 votes; for J. P. Stemper, 452 votes; for D. I. Hudson, 190 votes. In this canvass the vote of Fieldon township was stated to be as follows: For H. H. Higgins, 13 votes; for J. P. Stemper, 13 votes; for D. I. Hudson, 48 votes. The court found the actual vote cast in Fieldon township was as follows: For H. H. Higgins, 13 votes; for J. P. Stemper, 48 votes; for D. I. Hudson, 13 votes, making the total vote 487 for J. P. Stemper and 467 for H. H. Higgins. In these totals are included the votes cast in the village of Madelia, which were as follows: For H. H. Higgins, 49 votes; for J. P. Stemper, 94 votes; for D. I. Hudson, 20 votes.

*Daniel Rohrer* and *J. W. Seager,* for appellant.

*Freeman & Pfau, J. J. Thornton, D. Buck,* and *Collester & Foster,* for respondent.

DICKINSON, J.   This is a proceeding to determine, as between these contestants, the right to the office of sheriff of Watonwan county. The returns of the election in 1886, made to the county auditor, and as canvassed by the county canvassing-board, showed that this appellant, Higgins, had received 467 votes for that office; this respondent, Stemper, 452 votes; and one Hudson, 190 votes.   Higgins was accordingly declared to have been elected, and the proper certificate of election was delivered to him.   Stemper contested the election, and upon the trial of the contest in the district court it was found that the contestant, Stemper, had received the highest number of legal votes, and judgment was entered in his favor.

In the village of Madelia the election was conducted as though that village constituted an election district separate from the township of Madelia, where also a separate election for the township was held. The appellant claims that the vote of the village should not have been considered, because it was not a separate election district.   This village was originally incorporated by a special act of the legislature, (Sp. Laws 1873, *c.* 3,) and in 1884 it formally reincorporated under Laws 1883, *c.* 73.   It therefore came within the operation of Laws 1885, *c.* 145, so that the latter act is to be referred to as the law governing the village at the time of this election.   *State* v. *Cornwall,* 35 Minn. 176, (28 N. W. Rep. 144;) *State* v. *Spaude,* 37 Minn. 322, (34 N. W. Rep. 164.)   In the case last cited it was considered that a village governed by the general law of 1885 did not constitute an election district separate from the township.   This being a question of public interest, concerning which our statutes are not as plain as would have been desirable, we have re-examined it at this time.   We are still of the opinion that our former decision was right.   The subject is one of statutory regulation, and we have to consider the state of the law at the time of the election, in 1886.   By the general statutes relating to elections it had been enacted that "every organized township, and every ward of an incorporated city, is an election district," (Gen. St. 1878, *c.* 1, § 2;) and provision was made as to the

mode of holding the general elections for state and county purposes. This specific provision as to incorporated cities, no other municipalities being mentioned, leaves no doubt, even if otherwise there could have been any, that the mere existence of a village corporation within the township was not to affect the general operation of this law. This general election law must be deemed applicable to villages, unless in some way villages have been excepted from its operation. A general village law, adopted in 1875, (*c.* 139,) as amended in 1878, (*c.* 35,) had declared that villages organized under that law should constitute one election district only for the election of village officers. In 1883 (*c.* 49) this had been so amended as to make such villages "one election district," without qualification. But the general village law of 1885 (*c.* 145) had superseded the prior law. *State* v. *Spaude, supra.* In this act no explicit provision was made upon this subject, and the above declaration in the former law was not saved from the general repealing effect of the later statute. *Ellis* v. *Paige,* 1 Pick. 43, 45. Thus the general election law was applicable, unless the village law of 1885 controlled the subject.

The mere creation of village organizations within townships, for the purposes of local government, could not be deemed to have abrogated, as to such municipalities, the statute regulating elections for other than local purposes. Nor would the fact that very extensive and complete powers as to local affairs had been conferred, justify the conclusion that it was intended that such villages should constitute separate election districts for the purpose of elections pertaining only to the affairs of the county and of the state. The same or like reasons which may have induced the legislature to confer very large powers upon villages, even to the exclusion of any participation therein by the citizens of the remainder of the townships, might also be proper considerations influencing the legislature in its determination as to the expediency of making villages separate election districts for all purposes; but we cannot *infer* from such premises that the general election law had been so modified. Whether or not another method has been substituted for the established election law must depend upon the expressed will of the legislature, and not upon the fact that it ought or ought not to be so.

Section 16 of the law of 1885 provides for the holding of the annual election in March for the election of officers, designates who shall be judges of election, and the manner in which the election shall be conducted. Section 17 authorizes the calling of special elections, and makes the law relating to town meetings (which are held at the same time) to apply, so far as applicable, to "all village elections," except as otherwise provided. These provisions were framed with obvious regard to elections pertaining to local affairs, and it is impossible to construe them as expressing an intention on the part of the legislature that the general state elections occurring in November, and which have no direct connection with the village or township administration, shall be conducted in the same manner and independent of the township organization. We look in vain through this law for any provision which can justify such a conclusion. We therefore consider that the general law relating to state and county elections must be held to govern. See *Williams* v. *Potter,* 114 Ill. 628, 633, (3 N. E. Rep. 729;) *Wade* v. *City of Richmond,* 18 Grat. 583; *State* v. *Ward,* 17 Ohio St. 543.

It is contended that chapter 172 of the Laws of 1885 authorized the corporate authorities to make the village a separate election district, and that it is to be presumed, in the absence of proof, that this was done. This law requires the corporate authorities of any "village, town, or city," organized under general laws, to establish as many "voting precincts or voting places" as may be convenient for the inhabitants. But we think that the word "town" in this law refers to an incorporated municipality; that the law was intended to apply to municipalities which were already separate districts for general election purposes; and that it was not within the purposes of this act to authorize the municipal authorities to detach their municipality from a township of which, under the general law, it had been a part for election purposes.

But it does not necessarily follow that the vote of the village—163 ballots—should be rejected. This is a matter which concerns, not merely the contestants, but as well the people in their choice of public officers. So likely are defects to occur in election proceedings, and of so great importance is it that the real purposes of the election be

not defeated by such common occurrences, that the courts have always been slow to declare an election ineffectual, unless the law departed from has been deemed to be of such a fundamental character that its non-observance might involve or lead to greater evils than the avoiding of a popular election. If the case be not of such a character, it may be said upon authority that the vote of a precinct should not be thrown out, there being no reason to impute fraud, unless it appear that the irregularity affected or cast uncertainty upon the result of the election. *Taylor* v. *Taylor*, 10 Minn. 81, (107,) and cases cited; *People* v. *Cicott*, 16 Mich. 283, 323; *Farrington* v. *Turner*, 53 Mich. 27, (18 N. W. Rep. 544;) *Steele* v. *Calhoun*, 61 Miss. 556; *People* v. *Cook*, 8 N. Y. 67, (59 Am. Dec. 451.)

No other defect is suggested concerning this election than that it was held in the village apart from the election in the township, and was presided over by the village officers, who were the proper officers of election in all *village* elections. We may assume, therefore, that it was fairly conducted, with due regard to statutory requirements, except in the particulars just mentioned. It is not claimed that any person voted who had not the right to vote, nor that any voter was prevented, or refrained, from voting, nor that the true result of the election was not correctly returned. It is altogether probable that the people of the village, and the village officers, supposed this to be a separate district, and that the election should be conducted just as it was conducted. It was found by the court below that the village and the township were separate voting precincts at the time of this election, "and for a long time had been." The case affords no reason to doubt that the electors of the village and the officers presiding over the election had so understood the law, and acted in perfect good faith, nor that the result of the election was unaffected by the irregularity. Under these circumstances, we consider that the vote of the village should not be rejected, and that it was properly allowed. See authorities last cited, and particularly *Farrington* v. *Turner* and *People* v. *Cook*.

The court did not err in receiving parol evidence of the judges of election in the town of Fielden as to the number of votes actually cast, counted, and publicly declared for the several candidates. One

of the grounds of the contest was that, in making the return to the county auditor, 48 votes cast and counted for the contestant were by mistake assigned to Hudson, and 13 votes cast for Hudson were returned as cast for the contestant. The return was not conclusive. *Taylor* v. *Taylor*, 10 Minn. 81, (107.) Nor had the ballots themselves been so protected from possible corruption that they could be deemed legally preferable to this parol evidence. *Newton* v. *Newell*, 26 Minn. 529, (6 N. W. Rep. 346.)

What we have thus decided is sufficient for the determination of this contest, and as a decision upon the other points presented would not affect the result, we do not consider them.

Judgment affirmed.

MITCHELL, J. I concur in the result, although with much hesitancy. In all the cases in which it has been held that irregularities did not vitiate the poll, there was a *legal election district* in which an election was authorized to be held, and the irregularity or informality went merely to the manner of conducting it. But if a village is a part of the election district composed of the township in which it is situated, then there was in this case no such election district as the village of Madelia, and no authority for holding any such election. The existence of the village for mere village purposes would, so far as concerns a state election, cut no figure whatever. In the eye of the law, the case would be one where the inhabitants of a part of an election district, without color of right, assumed to hold an election of their own, separate from and independent of the legal election in the election district in which they resided. The village officers who assumed to conduct it were not even election officers *de facto*, under color of election or appointment, but mere usurpers. I fail to see how they, or any one who cast a ballot at such an election, could be held liable for any violation of the election laws. Any elector who voted there had the right to and might have also voted at the lawful polling place in that district. All our electoral rights depend on written law, and in all matters of substance the requirements of this law must be strictly followed; otherwise society would soon become disorganized. To attempt to sustain a poll like this upon principle

would involve a laxity of doctrine regarding popular elections that would, I fear, be a dangerous precedent. If it is to be sustained, I prefer to do so solely upon grounds of public policy and necessity, arising out of a peculiar and exceptional state of facts compelling such a decision in order to prevent serious public evils. As stated in the opinion, the law of 1883 made every village organized under it "one election district," without any qualification. The act of 1885, which superseded that of 1883, was so vague and blind upon this question as to leave it in great doubt. It is a matter of common knowledge that, prior to the decision of the *Spaude Case* by this court, the prevailing opinion was that villages still remained separate election districts for all purposes. In many villages in the state, elections were conducted in good faith upon this construction of the law, and generally acquiesced in and acted upon as legal and valid. The results have become so interwoven in the affairs of government, both of a political and financial nature, that to now hold such elections invalid would in all probability result in much confusion and great public inconvenience. This mode of holding elections was, according to the construction which the court has since placed upon the statute, an error; but the error was so common that it must now have, as to the past, the force of law. It is one of those cases which even courts are sometimes justified in recognizing as compelling a decision contrary to strict principle, on grounds of public necessity, in order to prevent serious public evils. In my judgment it is only upon this ground that this poll can be sustained.

COLLINS, J. Concurring in the result herein, I deem it but proper to say that my views upon the main question in issue have been wholly changed since formed and expressed while serving as district judge, and upon the trial of an action in which was involved the right to have counted the vote cast upon the day of the general election in 1886, in a village organized as is the village of Madelia, and before the decision of this court in *State* v. *Spaude,* 37 Minn. 322, (34 N. W. Rep. 164,) in which I took no part, was made. The change mentioned has been brought about by a discussion and consideration of the case at bar, and of the evils which might follow should it be held

that any part of one or more organized townships, having the statutory number of legal voters, may, by a majority vote, detach itself and establish a municipality, without any regard whatsoever to the rights or wishes of those who may happen to reside outside of the ambitious territory, and that thereafter, from time to time, "additional and adjacent territory," upon the whim of its resident voters, may attach itself to the village without consulting its inhabitants, or anybody else, and thus finally wipe the parent township or townships entirely out of existence. To hold villages to be separate election districts is to decide that they are distinct municipal corporations for all purposes. I also prefer and do concur in the views of my brother Justice Mitchell upon the question discussed by him in his concurring opinion.