H. H. MAUCK, APPELLEE, V. E. D. BROWN, APPELLANT.

FILED DECEMBER 19, 1899. NO. 10,717.

1. Bill of Exceptions: PRESERVATION AND AUTHENTICATION OF BAL-
LOTS. Ballots cast at an election, and which were introduced in
evidence and counted during the trial of a contest between two
of the candidates for office at said election, were, at the close of
the trial, placed in the proper receptacles, which were then
closed, securely fastened, sealed and delivered to the officer
of the county in whose custody they were by law required to
be. A bill of exceptions was prepared which did not contain
the ballots nor have attached to it the packages in which they
had been placed, and, after the usual legal formalities, was pre-
sented to the trial judge for settlement and allowance. Both
parties were represented by counsel, and the judge, in the cer-
tificate of allowance of the bill, stated that the ballots were in-
tended to be included therein, and, on ex parte application of the
appellant, ordered the custodian to then deliver them to the
clerk of the trial court, he to attach them to the bill of excep-
tions. The order was obeyed, and the bill of exceptions was de-
livered by the clerk of the district court to the sheriff of the
county in which the trial occurred, who delivered it to the clerk
of this court. Held, As thus settled and allowed and transferred
to this court, the bill, in the absence of any attack upon it as
other than the true one, is complete, the ballots sufficiently
identified, made of it and authenticated.

2. Appeal and Error: SUFFICIENCY OF EVIDENCE. The questions pre-
sented determined not to be those for the presentment of which
a petition in error is the exclusive remedy, but of the weight
and sufficiency of evidence to sustain findings of the trial court
and proper in an appeal.

Mauck v. Brown.

3. **Elections: JUDGES: ENDORSEMENTS ON BALLOTS: CONSTRUCTION OF STATUTE.** The provisions of the Australian Ballot Law (Compiled Statutes, 1897, ch. 26), in regard to the endorsement of the names of the two judges on the back of ballots, are mandatory; and that it be done is made of the essentials of a valid election, and if it is not done, the ballots will not be counted. See *Orr v. Bailey*, 59 Nebr., 128.

4. ———: ———: ———. It is not sufficient that the name of one judge of the election appears on the back of the ballots. See *Orr v. Bailey*, 59 Nebr., 128.

5. ———: MARKING BALLOTS. That the cross be in the circle or square is not of the essentials of a valid ballot or vote. If the proper mark is made either on the right or left of, and opposite to, the name of a candidate, it may indicate the choice of an elector. And on a straight party ticket, if the cross is placed within the space which contains the circle, although not within or touching the latter, it may suffice to indicate the intention of the voter.

6. ———: ———: CONSTRUCTION OF STATUTE. That an elector shall place no mark upon his ballot by which it may afterwards be identified as the one voted by him, and that he shall not make any mark on the ballot except as directed in the law, are mandatory provisions, and a violation of either will invalidate the ballot as to which it occurs.

7. ———: CONTESTS: APPEAL. The provisions of said law in reference to a contest, inclusive of appeals from judgments therein, are complete within themselves, and the word "appeal" is therein used in its technical or distinctive sense, not generally, and indicates an appeal and not a proceeding in error.

APPEAL from the district court of Nuckolls county. Heard below before HASTINGS, J. *Reversed.*

See opinion for statement of the case.

*W. F. Buck* and *S. A. Searle,* for appellant:

Ballots on which the name of one judge only was indorsed should be counted. A voter who complies with the law, and marks his ballot correctly should not be disfranchised for errors, fraud or negligence of election officers. See *Horning v. Burgess,* 77 N. W. Rep. [Mich.], 446; *People v. Wood,* 148 N. Y., 142; *People v. Bates,* 11 Mich., 362; *Lindstorm v. Board of Canvassers,* 94 Mich., 467; *Bragdon v. Navarre,* 102 Mich., 259; *People v. Avery,*

102 Mich., 572; *Moyer v. Van De Vanter*, 41 Pac. Rep. [Wash.], 60; *State v. Fransham*, 48 Pac. Rep. [Mont.], 1; *Cook v. Fisher*, 69 N. W. Rep. [Ia.], 264; *Parvin v. Wimberg*, 30 N. E. Rep. [Ind.], 790; *Gass v. State*, 34 Ind., 425; *Dobyns v. Weadon*, 50 Ind., 298; *Mustard v. Hoppess*, 69 Ind., 324; *Duncan v. Shenk*, 109 Ind., 26; *Storm v. Stevens*, 104 Ind., 46; *Stout v. Board of Commissioners*, 107 Ind., 343; *May v. Hoover*, 112 Ind., 455; *Martin v. Pifer*, 96 Ind., 245; *Middleton v. Greeson*, 106 Ind., 18; *In re Douglas*, 58 Barb. [N. Y.], 174; *Anderson v. Likens*, 47 S. W. Rep. [Ky.], 867.

Spoiled ballots, with identification marks, erasures and other unnecessary marks, are illegal and void, and, when intentionally so marked by the voter, should not be counted. See *Spurgin v. Thompson*, 37 Nebr., 45; *Taylor v. Bleakley*, 39 Pac. Rep. [Kan.], 1045; *People v. Parkhurst*, 53 N. Y. Supp., 598; *Church v. Walker*, 72 N. W. Rep. [S. Dak.], 101.

The statutory directions for marking ballots are mandatory, and ballots marked in violation of the statute should not be counted. See *Martin v. Miles*, 46 Nebr., 772; *Sego v. Stoddard*, 36 N. E. Rep. [Ind.], 204; *Sanner v. Patton*, 40 N. E. Rep. [Ill.], 290; *In re Vote Marks*, 17 R. I., 812; *Curran v. Clayton*, 86 Me., 42; *Vallier v. Brakke*, 64 N. W. Rep. [S. Dak.], 180; *McMahon v. Polk*, 73 N. W. Rep. [S. Dak.], 77; *McKittrick v. Pardee*, 65 N. W. Rep. [S. Dak.], 23; *Parmlee v. Healy*, 64 N. W. Rep. [S. Dak.], 186; *Zeis v. Passwater*, 41 N. E. Rep. [Ind.], 796; *Pennington v. Hare*, 62 N. W. Rep. [Minn.], 116; *Christopherson v. Common Council*, 75 N. W. Rep. [Mich.], 445; *Attorney General v. Glaser*, 102 Mich., 405; *Curran v. Clayton*, 29 Atl. Rep. [Me.], 930; *Tebbe v. Smith*, 41 Pac. Rep. [Cal.], 454; *Parker v. Orr*, 41 N. E. Rep. [Ill.], 1002; *People v. Board of Canvassers*, 156 N. Y., 36; *Hope v. Flentge*, 140 Mo., 390; *Ellis v. May*, 58 N. W. Rep. [Mich.], 483; *Attorney General v. McQuade*, 94 Mich., 439; *People v. Board of Canvassers*, 129 N. Y., 395; *State v. Walsh*, 25 Atl. Rep. [Conn.], 1; *Baxter v. Ellis*, 15 S. E. Rep. [N.

Car.], 939; *Bechtel v. Albin*, 33 N. E. Rep. [Ind.], 967; *Van Winkle v. Crabtree*, 55 Pac. Rep. [Ore.], 831; *Whittam v. Zahorik*, 59 N. W. Rep. [Ia.], 62.

*Robert Ryan*, also for appellant.

*G. W. Stubbs, W. D. Oldham* and *Frank Irvine, contra:*

Rulings below as to validity of ballots can only be reviewed in a proceeding in error. See *Scroggin v. National Lumber Co.*, 41 Nebr., 195; *Ainsworth v. Taylor*, 53 Nebr., 484; *Troup v. Horbach*, 57 Nebr., 644; *Te Poel v. Shutt*, 57 Nebr., 592; *Estep v. Schlesinger*, 58 Nebr., 62; *Brotherton v. Brotherton*, 12 Nebr., 72; *State v. Lancaster County*, 13 Nebr., 223; *Morse v. Engle*, 26 Nebr., 247; *Prentice Brownstone Co. v. King*, 39 Nebr., 816; *Campbell v. Farmers & Merchants Bank*, 49 Nebr., 143; *Dixon Nat. Bank v. Omaha Nat. Bank*, 54 Nebr., 796; *Lowe v. Riley*, 57 Nebr., 252; *Hayden v. Hale*, 57 Nebr., 349; *Holmberg v. Hauck*, 16 Nebr., 337; *Weigel v. City of Hastings*, 29 Nebr., 379; *State v. Tibbets*, 52 Nebr., 229.

References as to correctness of rulings relating to ballots: *State v. Russell*, 34 Nebr., 121; *People v. Holden*, 28 Cal., 136; *Wyman v. Lemon*, 51 Cal., 273.

HARRISON, C. J.

The two parties to this action were candidates for the office of county attorney of Nuckolls county at the general election held November 8, 1898, and as a result of a canvass of the votes cast the appellant was declared elected, and the certificate of election was issued to him. It was determined that he had received 1,285 votes, and the appellee 1,284. The appellee, who had been for nearly two years prior to, and was at the time of, the election county attorney, refused to surrender the office, and instituted in the county court this action—a contest of the election. The contestant was successful in the county court, and the defeated party appealed to the district court, where the cause was tried, and judgment

rendered for the contestant, H. H. Mauck, and the con-
testee, E. D. Brown, has perfected an appeal to this
court.

The ballots cast at the election were obtained and
counted by the county court, and it was decided that the
appellee had received 1,277 votes and the appellant 1,273,
or that for the former there was a majority of four. In
the district court the ballots were examined, and as the
result of another count it was settled that for the ap-
pellee there were 1,277 legal votes and for the appellant
1,272—a difference of five in favor of the former, who
was adjudged entitled to the office. In the trial courts
the ballots were produced, identified and received in
evidence, there being no further evidence introduced or
offered.

It is urged for appellee that there can be no examina-
tion of the questions of litigation, for the reason that the
evidence is not in the bill of exceptions. In the prepara-
tion of that document the counsel for appellant had at-
tached thereto copies of the ballots, or exhibits, to which
they desired to direct the attention of this court; but
these, at the time of the settlement of the bill, were
stricken out of it; hence are not here for any purpose.
After the ballots had been counted in the district court,
as to the disposition made of them, there appears the fol-
lowing statement: "The Court: All of said ballots have
been admitted in evidence and examined by the court,
resealed carefully in the presence of the court, and re-
turned and redelivered to the custody of the county clerk
of Nuckolls county, Nebraska, from whom they were ob-
tained, and are numbered from 1 to 18 in the order in
which they appear in the tally and result of their count,
which has been kept by the court." The certificate of
settlement and allowance of the bill of exceptions is as
follows: "April 6, 1899. Both parties appear by attorney
for the settlement of the proposed bill of exceptions in
this cause. I, W. G. Hastings, judge of the seventh ju-
dicial district, and presiding at the trial of the above

entitled cause, do hereby certify that this proposed bill of exceptions, as corrected by amendments allowed, contains all the testimony introduced and offered on said trial, except the original ballots, together with all objections made thereto, and the exceptions taken thereon; and I approve, settle and sign the same as the bill of exceptions in this case, and order that the same be made a part of the record in said cause in said court. The original ballots, marked in packages exhibits 1 to 18 inclusive, were at the trial carefully sealed and redelivered to the clerk of Nuckolls county, and are intended to be included in this bill of exceptions, and, when added, constitute all the evidence adduced in this cause, together with this bill. W. G. Hastings, Judge." This discloses that both parties were represented when the bill was settled and that therein was "intended to be included" the ballots in the packages in which they were placed at the close of the trial. April 10, or four days later, on application on behalf of the appellant, the trial judge ordered the county clerk of Nuckolls county to deliver the packages of ballots to the clerk of the district court and he to attach them to the bill of exceptions, and the order apparently was obeyed, the packages of ballots were, with the bill of exceptions, delivered by the clerk of the district court to the sheriff of the county, to be transmitted to the clerk of the supreme court, and the duty with which the sheriff was charged, it appears, has been performed. It might probably have been better practice to have obtained an order for the presence of the ballots at the time and place of the settlement of the bill; but, in the absence of any claim of anything wrong about the exhibits as attached, we will overrule the objections to the consideration of the bill.

It is argued for appellee that the matters of which appellant asks consideration are of alleged errors committed by the trial court, and will not be reviewed in an appeal. As we view the questions presented, they are rather of the sufficiency of the evidence received and

weighed to sustain the findings and judgment, proper inquiries in an appeal proceeding.

There were discovered during the count of the ballots nine with the name of but one judge of election on the back of each. Seven of these were favorable to the election of appellant and two to that of appellee. They were not counted, and that they were not is of the complaints of appellant. In the decision of the case of *Orr v. Bailey*, 59 Nebr., 128, similar questions were presented and examined, and it was determined that the provisions of the ballot law, that the signatures of two judges of the election should be written on the back of the ballot before given to the voter, and if not, the ballot should not be deposited in the ballot-box, and if it was, should not be counted, were mandatory, and ballots not so identified, or on the back of which there appeared the signature of but one judge of the election, should not be counted. A re-examination of the question at this time does not change our views of the matter; hence this objection must be overruled.

It will probably be best to here insert a statement of some of the principal prescriptions of the statute relative to the official ballots, the forms, the manner of marking by the voters, etc., to which it will be necessary to hereinafter refer in the discussions of the objections to particular ballots and the manner of marking ballots in specific instances. We will also call attention generally to some decisions of this court on questions which have arisen and been presented under the various provisions of what is designated the "Australian Ballot Law" enacted by our legislature and in force in 1898. The ballots must be of a good quality of "news printing paper," white in color, and for the printing black ink shall be used. The names of candidates for each office to be arranged according to parties under the party name and emblem and in separate columns. Each column which contains a list of the candidates of a party is to be separated by a distinct and heavy line, and within the column

at the top shall be printed the party appellation or title. At the top of each party column or ticket, under the emblem, shall be made a circle one-half inch in diameter, in which a person who desires to vote a straight party ticket may make a cross, which will signify a vote for every candidate whose name appears on said party ticket. Above the circle on each ticket of the ballot shall appear in print the words "For a straight ticket mark within this circle." Immediately to the right of the name of each candidate, and following or on the line with the name, there is to be printed a square, each side of which is to be not less than one-fourth of an inch, the square to be detached from the heavy line separating the columns. At the end of the list of candidates for each office to be filled at the election there is to be a blank space with lines and a small square to the right, and on each line space lines and squares for as many written names of candidates as there are candidates on any and all tickets for said office. See Compiled Statutes, 1897, ch. 26, sec. 140. In section 155 it is stated: "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." In regard to counting, section 151 contains the following: "Any ballots or parts of a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted, *Provided*, that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, that it shall be the duty of the judges of election to count such part." Of the instructions to voters are the following: "The ballots are prepared as follows: If you wish to vote a straight ticket, make a mark in the circle at the top of the ticket, and your ballot will then be counted for every candidate on the ticket under the circle. If you wish to vote otherwise than the straight ticket, you place a cross with an indelible pencil, in the square on the right margin of the ballot opposite the name of each person for whom you wish to vote; if you wish to vote a straight ticket with the exception of certain offices, place a cross

in the circle at the head of the ticket you wish to vote
in the main, and then place a cross opposite the names
of the candidates you wish to vote for on other tickets.
* * *   Do not make any mark on the ballot save as
above directed, or the ballot will not be counted." See
Compiled Statutes, 1897, ch. 26, schedule "B." In re-
gard to the manner of voting, and more particularly the
subject of marking the ticket, it is said in section 146 of
the chapter 26, that it shall be by a cross placed in the
circle to signify a party vote, and in a square to evidence
a vote for one specific candidate. In the case of *State v.
Russell*, 34 Nebr., 118, some of the provisions of the Aus-
tralian Ballot Law being under consideration, it was
said: "In the construction of statutes of this character
it is important to keep in mind two recognized princi-
ples: First—That the legislative will is the supreme
law, and the legislature may prescribe the forms to be
observed in the conducting of elections and provide that
such method shall be exclusive of all others. Second—
Since the first consideration of the state is to give ef-
fect to the expressed will of the majority, it is directly
interested in having each voter cast a ballot in accord-
ance with the dictates of his individual judgment. Rec-
ognizing the principle first stated the courts have uni-
formly held that when the statute expressly or by fair
implication declares any act to be essential to a valid
election, or that an act shall be performed in a given
manner and no other, such provisions are mandatory
and exclusive. By an application of the second princi-
ple the courts, in order to give effect to the will of the
majority and to prevent the disfranchising of legal
voters, have quite as uniformly held those provisions to
be formal and directory merely, which are not essential
to a fair election, unless such provisions are declared to
be essential by the statute itself." It was further ob-
served that not every marking from which a ballot might
afterwards be distinguished would render it illegal. And
in the opinion in *Spurgin v. Thompson*, 37 Nebr., 39, it was

held: "While the statute requires that the cross which signifies the preference of the elector shall, in ink, be placed in a space designated for that purpose, a ballot upon which such preference is indicated by a cross made with a lead pencil, outside the space designated, but opposite the name of the choice of the elector, should be counted according to such manifest intention." And further: "The indorsement of the name 'Eagleham,' he not being one of the election judges, upon a ballot, was within the inhibition of the statute forbidding the marking of his ballot by an elector, and vitiates said ballot." In *Martin v. Miles*, 46 Nebr., 772, it was announced: "The provision of section 20, act of 1891 ('Australian Ballot Law'), for the expressing of the voter's intention by a mark opposite the name of the candidate of his choice, is mandatory, and the manner thus prescribed is exclusive of all others, and such is the rule, whether the names of candidates be printed on the ballot or written thereon by the voter."

In the consideration of the objections to ballots which are drawn into question in the arguments, we will refer to the precinct in which they were voted. There was a ballot cast in Beaver precinct upon which, near to the left hand of the name of each candidate of the republican party, except for the office of county attorney, there appeared the cross. None of them were to the right of the candidate's name in the space provided and in which to vote properly, or, to speak more accurately, to vote strictly in the manner prescribed by the law, the cross should have been placed. On the "people's independent" portion of a ballot cast in Beaver precinct, and in reference to the office of county attorney, appeared this: ✕ H. H. Mauck. ☐  To the left hand of this were like spaces on the republican ticket, and in the larger was the name of the appellant as candidate for county attorney, but between the two was the distinct and heavy line which it is prescribed by the law shall separate upon the ballot the different party lists of offices and

names of candidates therefor. It seems clear, from the correspondence of this cross in place relative to the candidate's name with all the others made by the voter on the ballot, that it was his intention to vote for H. H. Mauck for the office for which he was a candidate, and this view is strengthened by the fact that the cross was on the people's independent ticket as separated from the republican ticket by the distinct and heavy line. We are satisfied that this vote was properly counted as one for Mauck.

There is a further question argued of this vote, that it is not an expression in the manner authorized by law of the voter's choice of any one for the office of county attorney. Within the rule announced by this court in the consideration of a like contention in the case of *Spurgin v. Thompson*, 37 Nebr., 39, this was an indication of the voter's preference of Mauck for the office for which he was striving.

A ballot was cast in Spring Creek precinct which had a cross marked not in the circle but near it, and in the space wherein was placed the circle at the head or top of the column entitled "people's independent." This was counted for Mauck, and the contention for appellant is that the mark of the cross in the place in which it appeared was not a marking such as is required by law, but was an identifying mark. It is true the manner of marking the ballot might serve to identify it; but with the policy of the law as declared in the section, wherein it is stated that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention it shall be counted, and the construction given to the law by this court in *State v. Russell, supra*, and *Spurgin v. Thompson, supra*, there was an indication here of the voter's intention which was entitled to recognition, and it was proper to count the vote.

In Beaver precinct there was a ballot cast upon which there had been made with a pencil, evidently by a voter, a circle within the circle which appeared on the official

ballot and about half as large, and also a cross which was partly in and on the inner pencil circle and the ends of which extended into the larger and true circle of the ballot. There was also in the vote of Spring Creek precinct a ballot marked similarly to the one we have just noticed, with the addition of a horizontal line marked through and on the inner circle and almost immediately through or over the point of junction of the lines of the cross within the inner circle. There was also a ballot cast in Sherman precinct marked in a manner very similar to the first one of these three, the only difference being that one line of the cross was shorter than the other. Among the ballots cast in Hammond precinct was one which had the cross made within the circle at the head of a party ticket and also a cross in the proper place relative to each candidate on the ticket, except one immediately underneath the name of the one candidate as to whom there was no cross mark there appeared written with a pencil, "Anybody but him." A ballot was cast in Beaver precinct with a cross in the circle at the top of a people's independent ticket and the word "against" written in the blank space under the name on the ballot of the republican candidate for congress, and "for" written in the blank space underneath the name on the ballot of the candidate for congress of the "people's independent party." The words were evidently written with an indelible pencil. Among the ballots of Beaver precinct was one which was marked in the circle at the top of the party ticket with five or six straight lines, each extending beyond the lines of the circle and crossing some of them near the centre of the circle, the others crossing not at nor so near the centre. This altogether formed a somewhat star-shaped figure. In the same precinct there was cast a ballot which had no cross upon it, but had a letter "H" in the circle at the head of the party ticket. A ballot cast in Victor precinct was marked in a circle at the top of ticket with three lines so placed as to form a star. The law prescribes, as we have seen, that the mark

by the voter be a cross. The voter is charged with a knowledge of the law and, moreover, has a card of instructions before him to inform him of the manner of voting, for there must be a printed card of instructions in each voting compartment or booth. See Compiled Statutes, ch. 26, sec. 150. It does not seem probable that he will or need to mistake the manner of marking the ballot, or to mark it improperly, unless he is entirely heedless, or he desires or intends a marking different than directed. It has been decided that the mark must be a cross—that it is required by law and the requirement is exclusive. See *Martin v. Miles, supra.* As we have seen, the voter shall not place any mark upon the ballot by which it may be known as the one which he voted, and the legislature, in the enactment of the form and substance of the card of instructions, gave a construction to the law in this respect, and announced the rule to be followed when it stated what we have hereinbefore quoted: "Do not make any mark on the ballot save as above directed, or the ballot will not be counted." This was to say that, if a ballot has other marks than those prescribed, it is invalid. All the ballots with peculiar markings to which we have just directed the attention, more or less in detail, were violative of the letter and spirit of the law, and should not have been counted.

The appellee accepts the count as made by the court. It gave him 1,277 and the appellant 1,272—a majority of five for the former. Of the count as attacked by the appellant eight votes were invalid and should not have been counted for appellee. Subtracting these from the total as counted for him by the trial court, 1,277, leaves him but 1,269, and the appellant has 1,272—a majority of three.

There are other matters of objections to ballots as counted argued for the appellant; but as the foregoing will dispose of the entire litigation, we need not discuss the question in regard to other ballots.

This matter has been presented to this court by an

appeal, and for the appellee there was filed and submitted a motion to dismiss, on the ground that it was not an action in equity and not appealable, which motion was denied. The question raised by the motion has been again urged in the arguments upon the merits of the action. As we have before herein indicated, the contest was of inception in the county court, thence removed by appeal, after judgment, to the district court, and from its judgment an appeal perfected to this court. The general right to an appeal provided for in the Code of Civil Procedure has been restricted to "actions in equity" (Code of Civil Procedure, sec. 675); and a review of a strictly law action can only be obtained in an error proceeding, and an appeal will not lie. See *Dixon Nat. Bank v. Omaha Nat. Bank,* 54 Nebr., 796. The statute herein in question is clearly one complete within itself (with possibly a slight exception, which we will notice hereafter, and which, as we shall see, does not materially affect the present question) on the subject of the action of contest, inclusive of the manner of its review, in an appellate court. The language used is all of an appeal in its distinctive sense; and it was fully within the power of the legislature to provide for the review in a proceeding by appeal. At the time of the passage of the act, in which there were the provisions in regard to contests of elections, appeals, in the particular and not general sense of the term, were proper to obtain reviews in equity cases. See Code of Civil Procedure, sec. 675. The one given by the law in question was not an appeal in an action in equity—an appeal given by the Code of Civil Procedure —but provision for review of a specific proceeding, of which all the matters and methods entering into it to render it as a proceeding complete were embraced in the act by which it was created, and there exists no reason, in the nature of the action of contest or the methods to be pursued in it, for holding that the intention of the legislature was other than expressed in the law clearly, that there should be an appeal as distinguished from a

proceeding in error. In one portion of the law (sec. 86) it is stated in reference to the contest that "The proceedings shall be assimilated to those in an action, so far as practicable." This does not make the law objectionable for appropriating methods of procedure in vogue by virtue of other sections of the statute. That the procedure is thus made to conform to that in existence in other cases does not make the law invalid, nor any the less complete within itself. See *Davis v. State*, 51 Nebr., 301; *Campbell v. Board of Pharmacy*, 45 N. J. Law, 245; *Curtin v. Barton*, 139 N. Y., 514. For like legislation see chapter 20, Compiled Statutes, "Probate (County) Court Act," wherein it · is provided that the provisions of the Code of Civil Procedure relative to justices of the peace shall, where no special provision is made, apply to the proceedings in all civil actions in the county court, and also that in certain cases the rules of practice concerning pleadings and processes in the district court shall be applicable, so far as may be, to pleadings in the county court. In the section of the election law on the subject of appeal in action of contest there is the following language: "The party against whom judgment is rendered in cases tried in the county and district court may appeal to the district or supreme court." See Compiled Statutes, ch. 26, sec. 98. It is argued that this is vague and indefinite; that it apparently provides that there may be an appeal from the county court direct to the supreme court. We do not so read it. The meaning is clear. That the appeal from the county court first mentioned of the courts of trial may be to the district court first named of the appellate courts; and with like effect on the meaning are the relative positions in the sentence of the district as a trial court and the supreme as an appellate. It has been assumed by both litigants and the courts, without being the subject of litigation or decision, that the word "appeal" in the election law in relation to an action of contest was used in its distinctive or technical, and not in a general, sense, and we are satisfied that the import

which has been given it is the correct one.    The judgment of the district court must be reversed, and judgment entered in this court for the contestee.

JUDGMENT ACCORDINGLY.