## CHRIS G. FUERST v. CARL SEMMLER.

### (149 N. W. 115.)

Statutory contest — county auditor — contestee and appellant — precluded from raising questions of irregularity — election precincts.

1. In a statutory contest involving the nomination at the last primary of a Republican candidate for the office of county auditor of Mercer county, *held*, for reasons stated in the opinion, that the contestee and appellant who was such county auditor is precluded from urging irregularities connected with such election in certain precincts.

Election precinct officers — irregular conduct of — will not as a rule vitiate the vote — knowledge of officer — fraud — expression of will of voters.

2. Irregularities in the conduct of an election by election officers over whom an elector has no control will not ordinarily vitiate the vote of such election where it appears that he had no knowledge of such irregularity, and voted in good faith; and especially is this true where, as in this case, no fraud is shown or alleged, and there appears to have been a full, free, and fair expression of the will of the electors.

Ballot — regular upon its face — indorsed with official stamp and initials of inspector — must be counted — initials put on by one of the judges.

3. A ballot which is in all respects regular upon its face, and is indorsed by the official stamp as required by law, and also contains the initials of the inspector, must be counted, although such initials were not indorsed by the inspector but by one of the judges of the election at the inspector's request.

---

Note.—As to effect of irregularities to render an election invalid, see cases in note in 16 L.R.A. 754.

As to official marks on ballot, the inclination of the courts seems to be to hold that failure by the officials to comply strictly with the provisions of the law in reference to the preparation of the ballot for the voter will not render the ballot void, unless the statute so requires it, or unless a count of the ballots notwithstanding such failure will interefere with some of the fundamental principles of a pure and secret ballot. For a full review of the authorities on this question, see note in 47 L.R.A. 806.

Statute — official ballots — authentication — mandatory — substantial com-
    pliance with law — mistakes not fatal to validity of vote.
    4. While the provisions of the statute requiring the official ballots to be au-
    thenticated in a certain manner is mandatory, it does not follow that a failure
    to strictly and literally observe its requirements is fatal to the validity of the
    votes cast. Where a substantial compliance with such statute is in good faith
    observed, the votes should be counted.

Opinion filed October 26, 1914.

Appeal from District Court, Mercer County, *Nuchols,* J.
From a judgment in plaintiff's favor, defendant appeals.
Affirmed.
*B. W. Shaw, W. H. Stutsman* (of counsel), Mandan, N. D., *H. L.
Berry,* Stanton, N. D., for appellant.
*Hanley & Sullivan,* Mandan, N. D., for respondent.

Fisk, J. This is the statutory contest involving the nomination of
a candidate of the Republican party for the office of county auditor of
Mercer county. The contestant and respondent and the contestee and
appellant were the only candidates at the primaries for such nomi-
nation, their names appearing upon the Republican primary ballot.
The canvassing board found and certified that the appellant received
428 votes and the respondent 425 votes for such nomination; and a
certificate was accordingly issued to appellant, certifying that he had
been duly chosen as the candidate of the Republican party for such
office. Thereupon respondent instituted this contest, claiming he was
duly nominated as such candidate, and he made application for a re-
count of the ballots cast at such primary election. A recount was ac-
cordingly had in the district court, and at the conclusion of the trial
that court made findings of fact and conclusions of law favorable to the
contestant and respondent, the court finding that contestant received
423 and appellant 421 legal votes. Judgment was entered pursuant
to such finding and conclusions, from which judgment this appeal is
prosecuted.

The correctness of the findings of fact thus made by the trial court
is not questioned, but appellant challenges the correctness of the court's
conclusions based upon the 6th and 12th findings of fact. The correct-

ness of these conclusions of law is the only matter for our consideration.

The 6th finding of fact is as follows: "That the board of county commissioners of said Mercer county is composed of three members; that at a regular meeting of said board of county commissioners, commencing on the 4th day of May, 1914, the said board of county commissioners designated polling places in the several voting precincts of said county, and appointed inspectors of election for the several voting precincts of said county; that in voting precinct No. 3 of said county, Hans Johnson was appointed inspector of elections for the primary election, and that in voting precinct No. 15 of said county R. N. Harmsen was appointed inspector of elections for said primary election; that schoolhouse on section eleven (11), in township one hundred forty-four (144), range eighty-six (86) was designated as the voting place in said precinct No. 3, and that "Hazen" was appointed as the voting place in said precinct No. 15; that on the 20th day of May, 1914, the board of county commissioners of said county were in session pursuant to adjournment, and on motion, the board went out viewing roads and bridge sites, and on the 22d day of May, 1914, two members of the board of county commissioners, the chairman of said board being absent, returned to the county seat of said county, elected one of the members as chairman pro tem and proceeded to hold a purported meeting of said board of county commissioners, and at said purported meeting purported to vacate or discontinue voting precinct No. 15 and attach the same to voting precinct No. 3, and selected the place of voting in said precinct No. 3 as the village of Hazen, and designated Hans Johnson, the same person who had theretofore been designated as inspector of precinct No. 3, to be inspector of precinct No. 3 as enlarged and increased by the action of said county commissioners at said purported meeting; that the proceedings of the said two county commissioners purporting to act as the board of county commissioners were, by the auditor, written in the book in which the minutes of the proceedings of the board of county commissioners of said county are kept, and the proceedings by said two county commissioners were published in the official newspapers of the said county of Mercer over the signature of the defendant, as county auditor of said county, as the official proceedings of the board of county commissioners

of said county; that the proceedings of the said two county commissioners as written in the minute book aforesaid were not signed by the county auditor or the chairman of the board of county commissioners; that the chairman of the said board of county commissioners inadvertently omitted to sign the record of said proceedings. That the defendant, as county auditor of said county, sent no ballot box to R. N. Harmsen and sent no ballots or other election supplies to said R. N. Harmsen, but sent a ballot box to said Hans Johnson, and sent to said Hans Johnson two stamps of the kind to be used by inspectors of election precincts, one of which purported to be for election precinct No. 3 and the other for election precinct No. 15, and sent to the said Hans Johnson ballots and other election supplies purporting to be for two election precincts, viz.: Nos. 3 and 15; that no election was held in what had heretofore been known and designated as election precinct No. 15; that the electors of what had heretofore been known as election precinct No. 15, as well as the electors of precinct No. 3, voted at the village of Hazen in precinct No. 3; that the said Hans Johnson acted as inspector of elections at the polling place in the village of Hazen in said precinct No. 3; that upon the ballots delivered to the electors residing in what had heretofore been known as precinct No. 3, upon the back thereof, was placed a stamp containing the words, "Official Ballot Mercer County, North Dakota, Precinct No. 3," signed by said inspector with his name or initials; that to the electors residing in the territory heretofore known and designated as precinct No. 15, said inspectors delivered ballots, upon the back of which was stamped the words, "Official Ballot Mercer County, North Dakota, Precinct No. 15," and on which said inspector signed his name or initials; that the ballots cast by persons residing in the territory heretofore known as precinct No. 15 and the ballots cast by the electors residing in territory heretofore known as precinct No. 3 were, by said inspector, deposited in one and the same ballot box; that in returning the said ballots to the county judge of said county of Mercer, said inspector of elections placed in separate packages the ballots cast by the electors residing in territory heretofore known as precinct No. 15, and the ballots cast by the electors residing in territory heretofore known as precinct No. 3; that all of the persons who cast ballots at said primary election in the said village of Hazen in said county were electors either

in the territory heretofore known as said precinct No. 15, or in the territory heretofore known as precinct No. 3; that no claim is made by the defendant that any of the said ballots so cast were fraudulent, or that any person not residing in the territory heretofore known as precinct No. 15 or in the territory heretofore known as precinct No. 3, cast a ballot at said voting place in said village of Hazen; that the canvassing board of said county found and certified that in the territory embraced within said precinct heretofore known as precinct No. 15 and said precinct heretofore known as precinct No. 3, the plaintiff received fifty-one votes and the defendant received thirty votes; that the territory heretofore known as precinct 15, fourteen votes were counted for plaintiff and four votes for defendant, and in the territory heretofore known as precinct 3, thirty-seven votes were counted for plaintiff and twenty-six votes were counted for defendant."

The conclusion of law based on such finding is in the following language: "Upon the sixth finding of fact the court concludes as a matter of law that in the territory embraced in precincts known as precincts Nos. 3 and 15, the plaintiff received fifty-one (51) legal votes and the defendant received thirty (30) legal votes, and that such votes were properly so counted respectively for the plaintiff and defendant."

Appellant's contention with reference to such conclusion of law is, in the language of counsel's brief, as follows:

"First. That the purported meeting of the board of county commissioners of Mercer county was neither a regular nor a special meeting, in fact no official meeting, that at such meeting the commissioners had no right or authority to change the polling places nor the voting precincts of said county.

"Second. That, even conceding that such meeting was a legal one, the commissioners had no authority to consolidate precincts 3 and 15, and that their act in so doing was *ultra vires*.

"Third. Conceding that such meeting was a regular or special meeting called as provided by law, the call designating the object of such meeting, and that the commissioners had the authority to consolidate precincts 3 and 15 and designate the same as precinct 3, the official stamp of precinct 3 was not used on the ballots cast by the electors residing in 15, but the inspector and judges of election board presiding

at such precinct 3 placed on the ballots cast by the electors of 15, the stamp that was intended for the original precinct 15, and that such ballots therefore had no official stamp on them and were void."

Replying to such contentions, respondent's counsel direct our attention to § 1 of the primary election law, being chap. 109, Laws 1907, which section reads: "It is the intention of this act to reform the methods by which political parties shall make nominations of candidates for all public offices by popular vote. It shall be liberally construed so that the real will of the electors may not be defeated by any informality or failure to comply with all provisions of law in respect to either the giving of any notice or the conducting of the primary or certify the results thereof." And they argue in effect that conceding all that is contended by appellant's counsel with reference to alleged irregularities of the board of county commissioners, and also conceding that such board exceeded its powers in attempting to consolidate precincts numbered 3 and 15, and further conceding all that is claimed with reference to irregularities in conducting the primary election in such precincts, the conclusion of the trial court was correct because, first, this appellant, who was county auditor, knowingly acquiesced in or was in a way instrumental in causing such irregularities to occur to such a degree as to now estop him from urging the same as a ground for vitiating such primary election in such precincts; and, second, the acts constituting the irregularities complained of were done under color of right, and the electors in good faith and without any claim of fraud exercised their right of franchise, and their will ought not to be frustrated by the official act of the election officers over whom they had no control.

We are in full accord with the views of the trial court and of respondent's counsel upon this point. Time will not permit of an extended statement of our reasons for this holding, nor do we deem such extended statement necessary. Suffice it to say that appellant, as county auditor, and *ex officio* clerk of the board of county commissioners, was, in a sense at least, a party to the proceedings of which he now complains. He was present at all meetings of the board, kept the minutes of its various proceedings, and caused them to be published over his signature in the official newspapers of the county. He sent no election supplies to the former inspector for precinct No. 15, and

interpreted the second resolution of the board to mean that he should send but one ballot box to the inspector of the combined precincts and two sets of election supplies, and that the election officers should use but one ballot box, but should use both sets of election supplies. In brief, his conduct in sending out supplies to these precincts could be interpreted in but one way, that is, this is that the election officers should conduct the election in the precise manner in which it was conducted, with the single exception as to the action of such election officers in handing out certain ballots with the inspector's initials placed thereon by one of the judges instead of by such inspector. It is not questioned that such election officers in conducting the election in good faith followed the procedure thus mapped out for them, and the voters in good faith acquiesced therein. Nor is it claimed that such procedure, although irregular, resulted in the least in preventing a full, fair, and honest expression of the will of the Republican voters. In view of these facts we must hold that appellant is now precluded from urging such irregularities as a ground for annulling the election in these precincts. In reaching this conclusion, we do not overlook the fact that appellant, as county auditor, had no voice on the board of commissioners, nor do we wish to impute to him or to the board any bad faith whatever. He, as well as the members of the board, no doubt, acted in the best of good faith in all they did in the premises, but nevertheless their action had the necessary and natural effect of inducing the local election officers to conduct the election in the manner in which it was conducted, and we merely hold that because of this, they are and ought to be precluded from questioning the regularity of the election in so far as their acts were the inducing cause of any irregularities. Appellant was the active instrument or channel through which the acts of the board were interpreted to the local election officers, and he will not be heard now to say that the procedure was void and consequently the electors in such precincts must lose their votes. For the above reasons we find it unnecessary to decide whether or not the action of the commissioners was valid.

The same conclusion may be reached by another method of reasoning. From appellant's conduct in sending out two sets of election supplies it is fair to assume that he interpreted the action of the board as consolidating these precincts for the purpose merely of conducting

28 N. D.—27.

this election in both at one place and through one set of election officers. While this, of course, would be irregular, and was not contemplated by the legislature in enacting § 607, Rev. Codes 1905, which authorizes the holding of elections and having the polling places in certain cities, towns, or villages adjoining but outside of the election precinct, still an election thus held, in the absence of fraud or bad faith affecting the result, ought not for such reason to be declared a nullity, thus disfranchising the voters. The appellant apparently thus construed the resolution of the board, and the local officers followed his construction by keeping the election supplies separate and using those for precinct 15 for the electors of that precinct, and those for precinct 3 for the electors therein, also making separate returns for each precinct. That such irregularity in conducting the primary will not, under the facts showing good faith and a fair election, vitiate the votes cast thereat is amply supported by the authorities. Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95; Brattland v. Calkins, 67 Minn. 119, 69 N. W. 699; Hankey v. Bowman, 82 Minn. 328, 84 ·N. W. 1003; State ex rel. Byrne v. Wilcox, 11 N. D. 329, 91 N. W. 955; Perry v. Hackney, 11 N. D. 148, 90 N. W. 484; Whitcomb v. Chase, 83 Neb. 360, 119 N. W. 673, 17 Ann. Cas. 1088; Kerlin v. Devils Lake, 25 N. D. 207, 141 N. W. 756.

In the case of Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95, an election was held in a precinct established by the proper authorities. The precinct as established contained an organized village. Under the law of Minnesota as it existed at that time, the organized village was in an election district separate from the township; but at the election as held the election officers of the village acted as officers for the electors in the village, and the officers as appointed by the proper authorities acted as the election officers for the electors outside of the village. The court held that the village was not a separate election precinct, and that these officers acting as such in the village had no authority under the law to do so. The court continues:

But it does not necessarily follow that the vote of the village—163 ballots—should be rejected. This is a matter that concerns not merely the contestants, but as well the people in their choice of public officers. So likely are defects to occur in election proceedings, and of so great importance is it that the real purposes of the election be not defeated

by such common occurrences, that the courts have always been slow to declare an election ineffectual, unless the law departed from has been deemed to be of such a fundamental character that its nonobservance might involve or lead to greater evils than the avoiding of a popular election. If the case be not of such a character, it may be said upon authority that the vote of a precinct should not be thrown out, there being no reason to impute fraud, unless it appear that the irregularity affected or cast uncertainty upon the result of the election. Taylor v. Taylor, 10 Minn. 107, Gil. 81, and cases cited; People ex rel. Williams v. Cicott, 16 Mich. 283, 323, 97 Am. Dec. 141; Farrington v. Turner, 53 Mich. 27, 51 Am. Rep. 88, 18 N. W. 544; Steele v. Calhoun, 61 Miss. 556; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451.

No other defect is suggested concerning this election than that it was held in the village apart from the election in the township, and was presided over by the village officers, who were the .proper officers of election in all *village* elections. We may assume, therefore, that it was fairly conducted, with due regard to statutory requirements, except in the particulars just mentioned. It is not claimed that any person voted who had not the right to vote, nor that any voter was prevented or refrained from voting, nor that the true result of the election was not correctly returned. It is altogether probable that the people of the village, and the village officers, supposed this to be a separate district, and that the election should be conducted just as it was conducted. It was found by the court below that the village and the township were separate voting precincts at the time of this election, "and for a long time had been." The case affords no reason to doubt that the electors of the village and the officers presiding over the election had so understood the law, and acted in perfect good faith, nor that the result of the election was unaffected by the irregularity. Under these circumstances, we consider that the vote of the village should not be rejected, and that it was properly allowed. See authorities last cited, and particularly Farrington v. Turner, and People v. Cook.

Nor do we find any merit in appellant's contention that certain ballots were stamped by the wrong precinct number, and should therefore not be counted. They were stamped by the official stamp furnished for each precinct. In other words, the ballots delivered to electors in

the so-called 15th precinct were stamped with the stamp furnished for the precinct, and *vice versa* as to precinct No. 3. This was strictly proper on the theory that the alleged consolidation of the two precincts was void. If such consolidation was valid, it was a mere irregularity which would not vitiate the election. Miller v. Schallern, 8 N. D. 395, 79 N. W. 865, is not in point. That was a case where no initials whatever were placed on the ballots, and they were in no way thus authenticated as official ballots. Although the statute requiring such authentication of the ballots is mandatory, a literal compliance therewith is not exacted. A substantial compliance was observed, and this is all that was required. While, no doubt, it was the elector's duty to see that his ballot was authenticated in substantial conformity to the statute, it would be an exceedingly harsh and needless rule that would require that he should, at the peril of having his vote not counted, see that the statute had been literally observed by the election officers. Such is not the law as we view it. Bingham v. Broadwell, 73 Neb. 605, 103 N. W. 323, is directly in point, and we think states the law correctly. That court had previously held in Orr v. Bailey, 59 Neb. 128, 80 N. W. 495, and Mauck v. Brown, 59 Neb. 382, 81 N. W. 313, to the rule announced by this court in Miller v. Schallern, supra, to the effect that the statute requiring authentication of the ballot in a certain manner is mandatory. Among other things, the Nebraska court says: That "a voter who has complied with the statute by obtaining from the election board a ballot indorsed in writing, with the names of two members of the board, both of whom are ostensibly and, as he honestly supposes, are real judges, will not be deprived of his vote by the mere fact that one of such names is that of the clerk of the election. . . .

It was held by this court in Orr v. Bailey, supra, and again in Mauck v. Brown, 59 Neb. 382, 81 N. W. 313, and is generally held in other jurisdictions, that the statutory requirements of indorsement is mandatory; and the subject is not regarded as open for discussion here, but there is opportunity for inquiry, whether it was not *substantially obeyed.*"

The court further says: "At the threshold of such a discussion as this, the courts are met by two propositions, neither of which can be ignored or evaded. One is the constitutional enactment (§ 22, art. 1).

'All elections shall be free, and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise;' and the other, inherent in the idea of representative government, is that the free and uncorrupted will of the voter shall be given effect. In other words, that there shall be a 'free ballot and a fair count.' These principles pervade and dominate the whole field of inquiry, and affect the decision of every litigated question. All statutes and parts of statutes irreconcilably in conflict with or derogatory of either of them are nugatory, but none is presumed to have been intended so to be. The object of the so-called Australian election laws is not, as some judicial decisions seem to indicate, to limit or obstruct the free exercise of the elective franchise, or to restrict the free expression of the will of the voters, but to promote both these things by removing opportunities for imposition, intimidation, and corruption; and, being remedial in their nature, they are to be liberally construed for the accomplishment of the latter end, and no other."

And after approving the decision of the lower court, holding said ballots good, the court says: "We think the ruling was right. . . . To hold otherwise would be to put by judicial construction an insuperable obstacle between the voters and the polls. It would be to require the electors, at their peril, to make inquiry, and decide correctly and without deliberation, a question upon which three district judges were unable to agree after hearing elaborate arguments at the end of 40 consecutive days of investigation, and about which the members of this court may finally differ. If the statute attempts the imposition of such an obligation, it is unquestionably void. We do not think that it does so."

And after showing that the voters themselves had done all that they could reasonably be expected to do under the circumstances, the court says:

"They verified their ballots and the indorsements upon them as well as they were able to do 'at a glance,' to use the phrase of former decisions of this and other courts, and, having folded them as directed, handed them to a sworn official for further verification and deposit. If after all this they can be deprived of their votes because one member of the election board, whose name is indorsed on the ballots, was

a clerk, instead of a judge, the validity and result of elections would in all cases be in the discretion of the boards."

See also Parvin v. Wimberg, 130 Ind. 562, 15 L.R.A. 775, 30 Am. St. Rep. 254, 30 N. E. 790; McCrary, Elections, § 93; and Coulehan v. White, 95 Md. 703, 53 Atl. 786.

We conclude that appellant's first specification of error is without merit, and must therefore be overruled.

The second, and only remaining specification challenges the trial court's conclusion of law, based on its finding of fact No. 12, to the effect that five certain ballots cast in precinct No. 13 upon the back of which the inspector's initials had been indorsed by one of the judges of election, were properly counted. The finding is to the effect that such ballots were thus indorsed by one of the judges of the election *at the request and by the authority of the inspector.* There is no warrant in the finding for the assertion by appellant's counsel that the inspector was absent when his initials were thus indorsed by one of the judges. For all that appears the inspector may have been present and such indorsement made at his request and to expedite the official business; but as we view it this is not very material. In any event such indorsements were made by one having authority to authenticate the official ballots, and the sole complaint is that he should have indorsed his, instead of the inspector's, initials. It must be conceded, we think, that the object of the statute, which was the prevention of fraudulent voting, was accomplished as effectively in the one case as in the other; but counsel argue that the statute is mandatory and requires a strict and literal compliance with its terms. While the statute is no doubt mandatory in so far as it requires authentication in the mode provided in § 640, Rev. Codes 1905, we cannot believe the legislature in enacting § 648, providing that "in the canvass of the votes, any ballot which is not indorsed as provided in this chapter by the official stamp and initials shall be void, and shall not be counted," intended to visit such consequences where, as in the case at bar, a substantial compliance with the prior section had been observed. To attribute to the legislature such an absurd intent is equivalent to attributing to it an intent to lay a trap for the unsuspecting and good-faith voter, which he is almost certain to be caught in, and whereby his vote may, at the behest of dishonest or careless election officials,

be held for naught. The object sought to be attained by such statute does not require or justify us in giving it any such strict and literal construction. See State ex rel. Braley v. Gay, 59 Minn. 6, 50 Am. St. Rep. 389, 60 N. W. 676, which was cited with approval by this court in Perry v. Hackney, 11 N. D. 148, 90 N. W. 483. We have examined the authorities cited by appellant, some of which appear to support his last contention. To the extent that they do so we must decline to follow them for reasons above stated. The courts, as well as judges of the same court, are in hopeless conflict in their views on this question, as may be seen by an examination of them. Among others, see McGrane v. Nez Perce, 18 Idaho, 714, 32 L.R.A.(N.S.) 730, 112 Pac. 312, Ann. Cas. 1912A, 165, and the numerous cases collected in the note at pp. 171–175; Slenker v. Engel, 250 Ill. 499, 95 N. E. 618, and Choisser v. York, 211 Ill. 56, 71 N. E. 940.

We believe the better reasoned cases support our conclusions.

Judgment affirmed.

SPALDING, Ch. J. I concur in the result, but am not prepared to concur in the holding under No. 1 of the syllabus.