(90 N. W. Rep. 564.)

---

J. W. PERRY vs. JAMES HACKNEY.

---

**Purpose of the Australian Ballot Law.**

The purpose of the Australian ballot law is to secure a secret ballot to electors, to the end that they may express their choice of candidates uninfluenced by threats, intimidation, or corrupt motives.

**Statute Mandatory.**

The provisions of the statute governing the conduct of elections will be held mandatory, not only when made so by its express language, but also when the purpose of the lawmaking power would be plainly defeated if its command to do acts in a particular way did not imply an inhibition to do them in any other. In construing such provisions, every positive requirement which, if disobeyed,

would necessarily defeat the purpose of the requirement, should be held mandatory, and those which do not have that effect should be held directory.

## Booths—Duty of Election Inspectors.

Section 521, Rev. Codes, requires inspectors of elections to provide booths where voters may mark their ballots screened from observation, and a guard rail to prevent persons from coming within 10 feet of the ballot boxes and booths. *Held,* that said requirements are but means employed to secure the purpose of the law, viz., a secret ballot, and that a violation of the same does not necessarily destroy the secrecy of the ballot.

## Irregularities Not Affecting Result.

In this case the ballots were marked by the electors in secret, the persons voting at the contested precinct were qualified electors, and their votes were counted and canvassed as cast, and the election was free from fraud. It is *held* that the trial court did not err in refusing to throw out the precinct because of the failure of the precinct officers to comply strictly with the statute prescribing the manner of preparing booths and guard rails, inasmuch as such irregularities did not defeat the purpose of the requirement, or in any way affect the result of the election.

Appeal from District Court, Eddy County; *Lauder, J.*

Election contest between J. W. Perry and James Hackney. Judgment for defendant, and contestant appeals. Affirmed.

*Marion Conklin,* for appellant.

The statute requires booths, in which voters may prepare their ballots, to be so constructed as to screen the elector from observation, with the guard rail so constructed that only persons within the rail can come within ten feet of the booth. This statute is mandatory. § 521, Rev. Codes. § 129 Const. Wigmore Aust. Bal. 50. Black on Interpretation, 339. Potter's Dwarris on Statutes, 228. The statute is introductive of a new law and directs the manner of constructing the booth, and although there are no negative words in it, it must be strictly enforced. *Cook* v. *Keeley,* 12 Abb. Pr. 35; *Attorney Genl.* v. *Kirby,* 79 N. W. Rep. 1009; *Attorney Genl.* v. *McQuade,* 53 N. W. Rep. 944; *Attorney Genl.* v. *Stillson,* 66 N. W. Rep. 388. Where the meaning of a statute is clear, those upon whom compliance devolves have no right to engraft exceptions thereon, or make modifications or depart from the plain letter of the statute. *State* v. *McElroy,* 16 L. R. A. 278.

Thus where all the ballots of one party at a polling place bore a wrong endorsement by which they could be distinguished from other ballots cast at the same place in contravention of the statute the count of them was not justified by the fact that the endorsement was wrong because of a mistake of the county clerk in distributing the ballots to the polling places and that they were cast and received in good faith. *People* v. *Onondaga County Canvassers,* 129 N. Y. 395; *Miller* v. *Schallem,* 8 N. D. 395, 79 N. W. Rep. 865;

*De Goo* v. *Fitzsimmonds,* 83 N. W. Rep. 282; *Attorney Genl.* v. *May,* 58 N. W. Rep. 483. When the salutory provisions and regulations in respect to public elections are not substantially observed, the election is void, though it may have been conducted fairly and honestly. *Van Amringe* v. *Taylor,* 12 S. E. Rep. 1005; *Attorney Genl.* v. *May,* 58 N. W. Rep. 483. If the returns for Cheyenne precinct are thrown out, appellant is entitled to the office.

*S. E. Ellsworth,* for respondent.

The statement of the case as stated contains a portion of the evidence introduced upon the trial. Contestant demands a retrial upon the issues found in the VI finding of fact, only; this in compliance with a statute requiring appellant to specify the question of fact that he desires the supreme court to review. The questions of fact not specified are deemed to have been properly decided by the trial court. *Douglas* v. *Richards,* 10 N. D. 366, 87 N. W. Rep. 600. The findings of fact do not establish presumption of fraud upon the part of the election officers. Such a presumption cannot be inferred but must be clearly proved by the party alleging fraud. 14 Am. and Eng. Enc. L. 190; *Joyce* v. *Joyce,* 5 Cal. 161; *Smith* v. *Yule,* 31 Cal. 180. In cases such ·as this no intimidation or fraud being shown, and where the views and preferences of the electors were fully expressed, by their ballots, even though the statutory directions for the guidance of the voter and officers were not observed, the law is best served by giving validity and effect to the vote and not by wholly rejecting the same. *State* v. *Gay,* 59 Minn. 6, 60 N. W. Rep. 676; *In re White,* 28 S. W. Rep. 542. The voter who has had nothing to do with the preparation of the ballot nor with the matters preliminary to election should not be deprived of the right to have his vote counted, because of the errors or wrongful acts of the election officers. McCreary on Elections (4 Ed.) § § 706, 724; *Hankey* v. *Bowman,* 84 N. W. Rep. 1002; *Atkinson* v. *Lorbeer,* 111 Cal. 419, 44 Pac. Rep. 62; *People* v. *Prewett,* 56 Pac. Rep. 617; *State* v. *Sadler,* 58 Pac. Rep. 284; *Meyer* v. *Van De Vanter,* 41 Pac. Rep. 60. If the statute simply provides that certain acts shall be done within a particular time or in a particular manner and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do and directory if they do not affect the merits of the election. McCreary on Elections (4 Ed.) § § 225, 227; *Parvin* v. *Wimberg,* 130 Ind. 561, 30 N. W. Rep. 790. It is only those provisions of the statute relating to the time and place of holding elections, the qualification of voters and such others as are made prerequisites to the the validity of an election that are held to be mandatory; all others are directory, and failure to observe them, caused by ignorance or mistake and not resulting in manifest fraud does not afford grounds for rejecting the entire vote of the precinct. *Russell* v. *McDowell,* 23 Pac. Rep. 183; *Atkinson* v. *Lorbeer,* 44 Pac. Rep. 162; McCreary

on elections, § 228. Tested by these rules § 521 is not mandatory. It consists of directions for the guidance of election officers and refers wholly to the details of the manner of conducting the elections. A penalty is prescribed for the corrupt violation of the statute by election officers. § § 558, 560, Rev. Codes. The aim and purpose of the law is to secure to qualified voters an untrammeled expression of their will and if insured a correct record and return of the vote, it does not follow that because absolute secrecy is not observed that the purpose of the law in not attained. Those votes marked by the electors without entering the booths at all may legally be counted. *Hall* v. *Schoenecke,* 128 Mo. 661, 31 S. W. Rep. 97; *State* v. *Gay,* 60 N. W. Rep. 676; *Bowers* v. *Smith,* 17 S. W. Rep. 761; *State* v. *Norris,* 37 Neb. 299, 55 N. W. Rep. 1086; *Russell* v. *McDowell,* 23 Pac. Rep. 186; *Parvin* v. *Wimberg,* 30 N. W. Rep. 790; *Baltes* v. *Farmers'* etc., 83 N. W. 83; *Seymour* v. *City,* 33 Pac. Rep. 1059; McCreary on Elections, 518-524. If possible the poll should be purged and the legal votes should not be suppressed by reason of the malconduct of the officers of election. *Chamberlain* v. *Woodin,* 24 Pac. Rep. 177; *Lloyd* v. *Sullivan,* 9 Mont. 577; 24 Pac. Rep. 218; *Blue* v. *Peter,* 20 Pac. Rep. 442; *State* v. *Malo,* 22 Pac. Rep. 349; *State* v. *Fullinton,* 22 Pac. Rep. 378.

YOUNG, J. This is an election contest. J. W. Perry, the contestant and appellant, and James Hackney, contestee and respondent, were opposing candidates for the office of county auditor of Eddy county at the November 6, 1900, election. The canvass of the official precinct returns by the county canvassing board showed that James Hackney had received 388 votes for said office, and that the contestant had received 346 votes, or a majority for the contestee of 42 votes. In pursuance of such canvass, a certficate of election was issued to the contestee, whereupon the contestant initiated this contest under the provisions of article 12, c. 8, Pol. Code, being § § 563-575, Rev. Codes, inclusive. The contestant, in his notice of contest, challenges only one precinct, viz., Cheyenne precinct. It is his contention that the vote of this entire precinct should be thrown out because of certain irregularities, which we shall hereafter refer to. Excluding the vote of Cheyenne precinct, the contestant received 309 votes and the contestee 291 votes, or a majority for the .contestant of 18 votes. The vote of Cheyenne precinct, as officially returned and canvassed, gave the contestee 97 votes and the contestant 37 votes, which, added to the unchallenged votes of the other precincts, gave the contestee a majority of 42, as hereinbefore stated. The trial court made six findings of fact, covering all of the facts in issue, and as a conclusion of law therefrom found that "the vote of Cheyenne precinct, as returned by said election board, was properly counted and included in the abstract of the board of canvassers of said county; and a certificate of election to the office of county auditor, based on said abstract, was properly

issued to the contestee, James Hackney." Judgment was entered dismissing the action. The contestant has appealed from the judgment.

A statement of case was settled, in which the "contestant demands a retrial upon the issues found in the sixth finding of fact." It is urged by counsel for respondent that the demand for a retrial is not sufficiently specific to authorize a review by us of the evidence upon any question of fact. We find it unnecessary to pass upon this objection. The sixth finding relates to the conduct of the election officers in Cheyenne precinct. It is not contended by counsel for appellant that any illegal votes were cast or canvassed, or that there is any evidence of actual fraud or bad faith on the part of the election officers of that precinct. On the other hand, the contrary is conceded in their brief. His objection to the sixth finding, which is made a part of his demand for a review, and limits the scope of the review demanded, is "that the facts found by the trial court in the third, fourth, and fifth findings of fact establish a presumption of fraud upon the part of the election officers and others, which is not rebutted by any evidence in the case, and necessarily affected the result of said election—"The trial court found that there were cast in Cheyenne precinct, for the contestant and contestee, respectively, the number of votes returned by the precinct officers, and canvassed by the county canvassing board as before stated, and that the persons casting the same were qualified electors of said precinct. The correctness of these findings is not challenged by the contestant. His sole contention is that all of the votes cast in Cheyenne precinct were void, and should not be counted, because of the failure of the election officers of that precinct to comply with some of the provisions of section 521, Rev. Codes, relating to the manner of conducting elections. The particular provisions of the section relied upon are as follows: "The inspectors of elections shall provide, in their respective polling places a sufficient number of booths or compartments which shall be furnished with such supplies and conveniences as to enable the voter conveniently to prepare his ballot for voting, and in which electors may mark their ballots, screened from observation, and a guard rail with an opening so constructed that only persons within such guard rail can approach within ten feet of the ballot boxes or the booths or compartments herein provided for." The election in Cheyenne precinct was held in a school house, which was 35 feet long and 24 feet wide. Prior to the opening of the polls, the precinct officers arranged the room for election purposes in the following manner: An inclosed space was made at the north end of the building by placing a row of school desks across the building, with a single opening ·for entrance and exit, forming an inclosed space 10 feet wide and 24 feet long. In this inclosure the voting booths, ballot boxes, and all other furniture and supplies used in said election were placed. The booths were placed side by side, with the back against

the east wall of the building. The booths faced the inclosure, and were open, and without door or screen. The ballot boxes and booths were less than 10 feet from the row of seats used as a guard rail, and the booths were less than 10 feet from the election officers stationed within the enclosure. While engaged in marking his ballot, the body of each voter was in full view of the election officers and persons standing within the inclosed space and those standing near the row of seats forming the guard rail, and partly so to persons within the room. "The ballots, when laid upon the shelf across the booth for the purpose of marking, were screened and concealed from the view of the election officers and all other persons in the room by the body of the voter and the projecting side of the booth. The elector could have, had he been so disposed, so displayed his ballot by holding it up against the back of the booth in such a manner that the election officers and others in the immediate vicinity, both within and without the inclosed space, could have seen what candidates he was marking his ballot for." During the day one or two persons other than the election officers and the electors on their way to vote were allowed within the inclosed space, and at times during the day candidates and other persons occupied positions outside the row of seats constituting the guard rail, and within less than 10 feet of the ballot boxes and booths. The conditions as above stated continued during the day. The sixth finding of fact, which is the only one questioned in any way by the appellant, is that: "The said voting compartments were so placed with the back to the wall and open part toward the room, and the booths and ballot boxes within less than ten feet from the guard rail, by the election officers, through ignorance and misconstruction of the law relating thereto, and in the honest belief that it was proper to so arrange the booths that the elector would be in view of the election officers while marking his ballot; that the election officers acted in apparent good faith, and not from fraudulent or corrupt motives; and that it does not appear that any of the acts aforesaid in any manner affected the result of said election in said precinct." As before stated, the only criticism of this finding is that "the facts found by the court in the third, fourth, and fifth findings of fact establish a presumption of fraud on the part of the election officers and others." This objection presents a question of law only, and does not call for a review of the testimony relating to the facts embraced in said finding.

The question presented for our determination is the correctness of the legal conclusion of the trial court that the votes of Cheyenne precinct were properly included in the official canvass by the county canvassing board. Error is properly assigned thereon in appellant's brief. It is the contention of appellant's counsel that there was such a failure to comply with the requirements of section 521, above quoted, in respect to the arrangement of the guard rail and booths, as to vitiate the entire vote of the precinct. Briefly

stated, they contend that the provisions of said section are mandatory, and that a violation of said section in any particular, however slight or inconsequential, renders the election void. We are unable to so interpret the legislative purpose. At the outset we are met by the important fact that the legislature has not in express language declared that a violation of the provisions referred to shall be fatal to the election. The legislature has not, however, been silent as to the consequence of a violation of all of the provisions of the election law. In section 524 it is provided that in the canvass of votes any ballot which is not indorsed by the official stamp and initials shall be void, and shall not be counted. This mandate is imperative and explicit, and requires the exclusion of all votes not so stamped and initialed. *Miller* v. *Schallern,* 8 N. D. 395, 79 N. W. Rep. 865. Where a statute in terms declares that a violation of its provisions renders acts done thereunder void, there is no occasion for construction, and courts will hold the same mandatory in obedience to the expressly declared intention of the lawmaking body, without regard to their views as to the propriety of the same. As has already been said, the legislature of this state has not declared that a failure by the precinct inspectors to provide booths and guard rails in all respects as required by section 521, Rev. Codes, shall render the election void. The statute under consideration is, then, not in terms mandatory; but it is well settled that the employment of express words is not always necessary to give it that character. "Where the aim and purpose of the lawmaking power would be plainly defeated if the command to do the thing in a particular manner did not imply an inhibition to do it in any other, no doubt can be entertained as to the mandatory character of the statute." 23 Am. & Eng. Enc. Law, pp. 453, 454, and cases cited. The proper test for distinguishing mandatory from directory provisions in election laws is well stated by the supreme court of Indiana in *Parvin* v. *Wimberg,* 130 Ind. 568, 30 N. E. Rep. 790, 15 L. R. A. 775, 30 Am. St. Rep. 254, as follows: "If a statute expressly declares any particular act to be essential to the validity of an election, or that its omission shall render the election void, the courts, whose duty it is to enforce the law as they find it, must so hold, whether the particular act in question goes to the merits or affects the result of the election or not; for such a statute is mandatory, and the court cannot enter into the question of its policy. On the other hand, if a statute simply provides that certain things shall be done within a particular time or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, they will be regarded as mandatory if they affect the merits of the election, and as directory only if they do not affect its merits." On the same subject the supreme court of Missouri in *Bowers* v. *Smith,* 111 Mo. 45, 20 S. W. Rep. 101, 16 L. R. A. 754, 33 Am. St. Rep. 491, said: "If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence

of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise it is considered immaterial. It has been sometimes said, in this connection, that certain provisions of election laws are mandatory and others directory. These terms may, perhaps, be convenient to distinguish one class of irregularities from the other. But, strictly speaking, all provisions of such laws are mandatory in the sense that they impose the duty of obedience on those who come within their purview. But it does not, therefore, follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud, and have not interfered with a full and fair expression of the voters' choice." As was well observed by the Missouri court in the case just referred to, strictly speaking, all of the provisions of the law are mandatory in the sense that they impose a duty of obedience upon those who come within their purview. In the case under consideration it cannot be urged successfully that the inspectors had a discretion to exercise as to the arrangement of the booths and guard rails. It was their imperative duty to comply with the requirements of section 521 in reference thereto. The command of the legislature in said section is to be obeyed. A willful violation of the same is made a misdemeanor, and subjects the offender to both fine and imprisonment. Section 558, Rev. Codes. Was it the legislative purpose that every violation of the provisions of section 521, supra, by the precinct officers, however innocent and inconsequential as to the merits of the election, should be followed by a more far-reaching result than the punishment of the offending officers, namely, the disfranchisement of all the electors of the precinct, as contended for by the contestant? A negative answer must be given to this question. The legislature has refrained from the use of any language indicating such an intention. The violation of duty in this case was by the officers conducting the election, and not by the electors, and the latter were not in fault. The weight of judicial opinion is to the effect that, in the absence of fraud, a voter, who has nothing to do with the preparation of the ballots or matters preliminary to the election, should not be deprived of his right to have his vote counted because of the wrongful act of the election officers. McCrery, Elect. § § 706, 724, and cases cited. While conceding the correctness of the foregoing as a general rule, counsel for contestant contend that it is not applicable, for the reason that, as they contend, the violation in

this case was not a mere irregularity, but went to the very essence of the election, viz., to the secrecy of the ballot, and therefore vitiated the election; and in this connection cite section 129 of the state constitution, which provides that "all elections by the people shall be by secret ballot, subject to such regulations as shall be provided by law." It is plain that this provision is not self-executing. As was said by this court in *Miller* v. *Schallern,* 8 N. D. 395, 400, 79 N. W. Rep. 865 : "The last clause of section 129 expressly looks forward to legislation, and declares that the voting privilege is to be regulated, and in terms is to be 'subject to such regulations as shall be provided by law.'" It is a command to the legislature to provide an election system which shall embrace a secret ballot. This mandate of the constitution was obeyed by the legislature in the enactment of the present Australian ballot law. It cannot be doubted that the controlling purpose of the Australian ballot law is to secure a secret ballot, to the end that the elector may fully express his choice of the candidates to be voted for, uninfluenced by threats or intimidation, and that corruption of his vote may be prevented. The true rule is that : "Every positive requirement, which, if disobeyed, would necessarily defeat this object, should be held mandatory. But such as do not have that effect should be treated as directory, and a failure by the elector to strictly comply therewith should not be held to invalidate the vote if the spirit of the law in the particular case is not violated." Such is the holding in *Hall* v. *Schornecke,* 128 Mo. 661, 31 S. W. Rep. 97, in which the court construed a provision of the Australian ballot law requiring the voter, after receiving his ballot, to retire alone to one of the booths to prepare his ballot. In that case six ballots were prepared without entering the booths. The court held the provision to be directory, saying : "The section in question was only intended to give direction for the guidance of voters in voting. The spirit of the law and its purpose require that the ballot shall be secret. That it may be so, booths are provided, in which the ballot shall be prepared for voting. If the spirit of the law is pursued,—that is, if the ballot is in fact a secret one,—the will of the elector should not be defeated, unless expressly done by the statute for a failure to comply strictly with the directions." See, also, *State* v. *Gay,* 59 Minn. 6, 60 N. W. Rep. 676, 50 Am. St. Rep. 389, to the effect that the constitutional secrecy of the ballot does not mean an impossible or impracticable secrecy.

Applying these principles to the case at bar, we are unanimous in holding that the violations complained of under the facts of this case afford no ground for excluding the votes cast in Cheyenne precinct. The derelictions in question were free from fraudulent design, and were without effect upon the merits of the election. No illegal votes were cast, and there is no pretense that the voters did not vote their convictions with the same freedom that they would have had if the guard rail and booths had been arranged strictly in accord with the provisions of section 521, supra. Not only do the findings show that

the omissions had no effect upon the state of the vote, but they also show that the electors in Cheyenne precinct had a secret ballot within the meaning and spirit of the law. It is true, the statutory mode of guarding its secrecy was not strictly obeyed; that is, the voter was not screened from observation when marking his ballot in the manner contemplated by the statute, and the guard rails were not ten feet from the ballot boxes and booths. But these are mere means of securing a secret ballot, which is the end aimed at, and when that is accomplished the spirit and purpose of the law has been accomplished. By reference to the findings before set out, it will be seen that, while the body of the voter was in full view when in the booth, his ballot, when laid across the shelf in the booth for marking, was concealed by his body and the sides of the booth. He was able to mark his ballot screened from observation, and it does not appear that any ballots were marked otherwise than in secret. To hold that this election was not by secret ballot would be, in our opinion, to subordinate substance to form, and to hold that the means, and not the end, is of paramount importance. We agree with the conclusion of the trial court that the precinct in question was properly included in the abstract of the county canvassing board.

Judgment affirmed. All concur.