Kenneth MORGAN, Petitioner,

v.

Larry HATCH, Judge of the Richland County District Court; and James Dotzenrod, as Senator from the 27th District in the 46th North Dakota Legislative Assembly, Respondents.

Civ. No. 9579.

Supreme Court of North Dakota.

Jan. 6, 1979.

J. Gerald Nilles, of Nilles, Hansen, Selbo, Magill & Davies, Fargo, for petitioner.

J. Philip Johnson, Fargo, for respondent James Dotzenrod.

VANDE WALLE, Justice.

Kenneth Morgan petitions this court for a review of the Richland County District Court's decision, after a recount, to certify James Dotzenrod as the winner of a State legislative election. Morgan asserts that the district court erred in this decision and, as relief, requests that we order the district court to certify him as the winner of the election. We deny the relief that he requests.

Morgan and Dotzenrod were candidates in the general election conducted on November 7, 1978, for the office of State Senator from the Twenty-seventh Legislative District. On November 10, 1978, pursuant

to Sections 16–13–15 and 16–13–23, N.D. C.C., the county canvassing boards of Richland County and Ransom County canvassed the election returns from the Twenty-seventh Legislative District and made the following abstract of votes:

Morgan ..........2,459
Dotzenrod .........2,458

Four days later, Dotzenrod demanded a recount of the general-election ballots under Section 16–13–47.1, N.D.C.C. The county canvassing boards of Ransom County and Richland County conducted the recount under the supervision of District Judge Larry Hatch, with Dotzenrod and Morgan and their attorneys present. At the conclusion of the recount, the district court certified to the Secretary of State the recount results as follows:

Richland County
Kenneth Morgan .......1,137
James Dotzenrod .......1,114

Ransom County
James Dotzenrod .......1,340
Kenneth Morgan .......1,311

After the certification of the recount, the State Board of Canvassers certified Dotzenrod as the winner of the election over Morgan (2,454 votes to 2,448 votes).

Thereafter, on December 5, 1978, Morgan, by petition to the North Dakota Senate under the provisions of Section 54–03–07, N.D.C.C., contested the results of the general election for the Senate seat in District 27. In response, the Senate passed a resolution establishing a six-member Select Committee on Elections to investigate the allegations contained in Morgan's petition. On December 7, 1978, with Senate approval, Morgan withdrew his petition before the full Senate could consider either it or the recommendations of the Select Committee. A motion approved by the Senate to allow Morgan's withdrawal of the petition reserved "to Mr. Morgan the opportunity to pursue his rights under Section 47 of the North Dakota Constitution, . . ." Senate Journal, 46th Legis. Assembly, Dec. 7, 1978, p. 16.

Morgan has since petitioned this court, under Section 16–01–10, N.D.C.C., for a review of the district court's decision in the general-election recount. He alleges that the district court committed wrongful acts and neglected its duty when it upheld the validity of certain ballots despite his objections. Specifically, he argues: first, that 35 ballots from Liberty Grove Township, Richland County (21 for Dotzenrod and 14 for Morgan), are invalid because they were stamped with the official stamp of the primary election, dated September 5, 1978, rather than with the official stamp of the general election, dated November 7, 1978; and, second, that five absent-voter ballots from Homestead Precinct, Brightwood Township, and Lidgerwood City Precinct No. 2, Richland County (3 for Dotzenrod and 2 for Morgan), which the County Auditor forwarded directly to the county canvassing board because they were received too late to forward to the board of election, are invalid because they were endorsed with neither the official general-election stamp nor the initials of an inspector or judge of election. The district court rejected both of Morgan's arguments.

In response to Morgan's petition, Dotzenrod contends: that this court lacks jurisdiction; that because Morgan first submitted this election contest to the North Dakota State Senate, the doctrine of election of remedies precludes him from seeking a remedy in this court; that, in the event we consider the merits of Morgan's petition, the challenged ballots are valid; and that five other ballots (4 for Dotzenrod and 1 for Morgan), which the district court found void during the recount, also are valid.

Before considering the merits of Morgan's petition, we consider Dotzenrod's challenge to the jurisdiction of this court to hear the petition and also Dotzenrod's allegation that by petitioning the Senate to seat him pursuant to Section 47 of the North Dakota Constitution, Morgan has elected his remedy and thus is foreclosed from petitioning this court for relief.

■ The issue of the jurisdiction of this court to hear this matter was determined, albeit by a divided court, in *Kuhn v. Beede,*

249 N.W.2d 230 (N.D.1976). Although prior to initiating the proceeding in this court, Morgan petitioned the Senate to seat him pursuant to Section 47 of the North Dakota Constitution, which provides that each house of the Legislature is the judge of the qualifications of its own members, he withdrew his petition before any final action was taken thereon by the Senate. Under these circumstances, Morgan is not foreclosed from petitioning this court for relief.[1]

Turning to the merits, we first consider the matter of the five absent-voter ballots that were not received by the County Auditor in time to be forwarded to the proper precinct, but were postmarked prior to the date of the election and thus were received in time to be counted by the county canvassing board pursuant to Section 16–18–14, N.D.C.C., as amended in 1973.

In a series of decisions this court has held that absent-voter ballots must be properly stamped and initialed before they are placed in the ballot box. *Torkelson v. Byrne*, 68 N.D. 13, 276 N.W. 134 (1937); *Weber v. O'Connell*, 55 N.D. 867, 215 N.W. 539 (1927). Section 16–18–17, N.D.C.C., which sets forth the procedures for the handling of absent-voter ballots by the election board, provides, in part, that the judges of election, ". . . after endorsing the same as other ballots are endorsed, . . . shall deposit the ballot in the proper ballot box . . ."[2] Such procedure is necessary because once an absent-voter ballot has been removed from its envelope and deposited in the ballot box along with other ballots, there is no method of distinguishing the ballot from others. Sections 16–12–04 and 16–13–01, N.D.C.C., provide that failure to stamp and initial a ballot at any place on a ballot invalidates the ballot.

In *Kuhn v. Beede, supra*, a divided court held that the requirement of stamping and initialing absent-voter ballots was necessary even if the ballots were received in a precinct that used voting machines instead of paper ballots.[3]

None of these decisions, however, involved the initial counting of absent-voter ballots by the county canvassing board. Instead, they all involved the counting of absent-voter ballots by the precinct election board. The statute permitting the counting of absent-voter ballots postmarked prior to the date of the election but received too late to be forwarded to the precinct is a special procedure. Section 16–18–14, N.D. C.C., which governs this procedure, had its origin in Chapter 6, Section 4, S.L.1918 (Spec.Sess.). As originally enacted, it applied only to electors in military service. Chap. 6, Sec. 1, S.L.1918 (Spec.Sess.). In 1969, this section was amended to apply to all absent-voter ballots, not only to those of persons in the military service. Chap. 220, S.L.1969. The statute has been amended subsequently, and in its present form is found in Section 16–18–14, N.D.C.C., as amended by Chapter 197, S.L.1973. It provides:

> "In the case of congressional, state, or county elections, if any envelope postmarked prior to the date of the election and containing an absent voter's ballot is received by the proper officer too late to be forwarded to the proper voting precinct in time to be canvassed, the same shall be retained by him and canvassed by the canvassing board of the county of such officer at any time prior to the meeting of the state canvassing board or any adjourned meeting of said board where the same has been received by such

---

1. In *Kuhn v. Beede, supra*, Kuhn had petitioned this court for relief on December 14, 1976, after the House of Representatives, on December 7, 1976, had failed to adopt a motion to appoint a special committee of the House to conduct an investigation and recount and report its findings to the House. House Journal, 45th Legis. Assembly, Dec. 7, 1976, pp. 4–9.

2. This provision concerning endorsement refers by implication to Sections 16–12–04 and 16–

13–01, N.D.C.C., which, taken together, provide that a ballot is "endorsed" by stamping and initialing the ballot.

3. Section 16–18–20, N.D.C.C., sets forth the procedure for voting absent-voter ballots on a machine but does not, as noted in the opinion written by Justice Paulson in *Kuhn*, specify any particular method for validating those ballots.

officer in time to canvass and transmit the results to the state canvassing board. In the case of city or school district elections, if an envelope postmarked prior to the date of election and containing an absent voter's ballot is received by the officer too late to be forwarded to the proper voting precinct in time to be tabulated, the same shall be canvassed by the governing body of the city, or the school board of the school district, as the case may be, at such time as the other ballots are canvassed. Before forwarding any ballot to a canvassing board pursuant to this section, the officer forwarding such ballot shall print the date and hour when it was received on the envelope. Upon receipt, the canvassing board shall first determine that such elector is qualified to vote in that precinct and that said elector did not previously vote in that precinct on the date of the election before allowing such ballot to be tallied." [4]

We note that before 1969, when the provision became applicable to all absent-voter ballots and not only those of electors in military service, the statute had provided, in part:

". . . In all other respects such absent voter ballots of electors engaged in the military service or merchant marine of the United States shall be treated in the same manner as now provided for the absent voter ballots."

This provision was deleted by the 1969 amendment. The deletion indicates a legislative intent to require that the county canvassing board treat absent-voter ballots received too late to be forwarded to the precinct differently from those not received too late for forwarding. Section 16–18–14, N.D.C.C., is not concerned with ballots voted at the precinct level. As currently codified, it is an exclusive statute that governs only absent-voter ballots that are postmarked prior to the date of the election, but received too late to be forwarded to the proper precinct, and thus are to be counted

by the county canvassing board. The section provides that upon receipt of such absent-voter ballots, the canvassing board shall first determine that each elector is qualified to vote in that precinct and that the elector did not previously vote in the precinct on the date of the election. There is no provision in Section 16–18–14, N.D. C.C., requiring the ballots to be "endorsed" or stamped and initialed. Section 16–11–11, N.D.C.C., which requires an official stamp to be delivered by the County Auditor to the inspector of election in each precinct, does not contain a similar provision requiring a stamp to be delivered to the county canvassing board, nor are we aware of any other statutory provision that provides for an official stamp to be delivered to the county canvassing board. Thus the county canvassing board has no official stamp with which to stamp absent-voter ballots that, under the provisions of Section 16–18–14, N.D.C.C., it is required to count. Moreover, the stamps delivered to the precincts are not readily available to the county canvassing board because after the election, pursuant to Section 16–11–16, N.D.C.C., the inspector of election or one of the judges appointed by him is to deliver the official stamp to the city auditor to be preserved in his office. It is apparent that the Legislature did not contemplate the stamping and initialing of absent-voter ballots counted pursuant to Section 16–18–14, N.D.C.C. We therefore conclude that the requirement of stamping and initialing of ballots, including absent-voter ballots, is not applicable to those absent-voter ballots postmarked prior to the election but received too late to be forwarded to the precinct, and thus those ballots must be counted by the county canvassing board pursuant to Section 16–18–14, N.D.C.C.

In reaching such a conclusion we are not unmindful of the reason set forth in the previous decisions of this court for requiring the stamping and initialing of ballots, i. e., to prevent fraud. The canvass of votes

4. This statute has been amended many times to alter the number of days prior to the election that the envelope containing the absent-voter ballot must be postmarked in order to be counted by the county canvassing board.

by the county canvassing board, however, is not concerned with individual ballots, except for those absent-voter ballots that it is required to count pursuant to Section 16-. 18–14, N.D.C.C. Apart from the absent-voter ballots received too late to be forwarded to the precinct, the county canvassing board does not examine individual ballots; rather, it is concerned with only the returns made by the boards of election in the various precincts. Sec. 16–13–15, N.D. C.C.[5] Those individual ballots, pursuant to Sections 16–13–09 and 16–13–11, N.D.C.C., are delivered to the county judge, not to the county canvassing board, and are to be placed in boxes and retained by him in a fireproof vault, not to be opened nor inspected except upon the order of a court, in case of a contested election, when it is necessary to produce them at a trial for any offense committed at an election, or to permit election officials to complete their duties.

Because the county canvassing board does not personally examine nor count individual ballots cast at the precinct level, but examines and counts only those absent-voter ballots postmarked prior to the date of election but received too late to be counted at the precinct, and because the county canvassing board in counting such absent-voter ballots is required, before allowing the absentee votes to be tallied, to determine first that the absent voter is qualified to vote in the precinct and that the absent voter did not previously vote in that precinct on the date of the election, the danger of fraud that the requirement of stamping and initialing ballots at the precinct level was designed to prevent is not present. In any event, the Legislature has enacted no provision requiring such ballots to be stamped and initialed nor has it authorized an official stamp for use by the county canvassing board.

We next consider the issue of whether 35 ballots in Liberty Grove Township, Richland County, are invalid because they were not stamped with the November 7, 1978, general-election stamp, but rather with a stamp dated September 5, 1978. The transcript of proceedings of the recount reveals that counsel for Morgan stated on the record that the primary-election stamp, rather than the general-election stamp, was used on these 35 ballots.

As Morgan points out, Section 16–11–11, N.D.C.C., requires the County Auditor to deliver the official ballots and the official stamp to the inspector of election of each precinct at the meeting of inspectors of elections held pursuant to Section 16–10–17, N.D.C.C.,[6] or by mail or other reliable method. Section 16–11–11, N.D.C.C., further provides that the stamp shall contain the words "official ballot," the name or number of the precinct, the name of the county, the date of the election, and a blank line preceded by the word "Initials" for the purpose of providing a space where the judge or inspector of election shall place his initials.

Section 16–12–04, N.D.C.C., provides, in part:

". . . Before delivering any ballot to an elector, the inspector or judge shall stamp once at the top of the back of the ballot the designation 'official ballot' and the other words provided for in section 16–11–11, and also shall write his initials thereon. Failure to stamp and initial a ballot in the proper place on the ballot shall not invalidate such ballot but a failure to stamp and initial a ballot at any place on a ballot shall invalidate the ballot."

Section 16–13–01, N.D.C.C., provides that in the canvass of the votes in any election a ballot shall be void and shall not be counted if "It is not endorsed with the official stamp and initials as provided in this title; . . . ."

---

**5.** These returns consist of the reports of the total votes cast for each candidate or measure, the tally books, and the affidavit of each member of the election board that the ballots have been counted and the votes canvassed as required by law. Secs. 16–13–03, 16–13–04, and 16–13–05, N.D.C.C.

**6.** Such meeting is to be held not more than 20 nor less than 3 days prior to the election.

Morgan argues that because the 35 ballots in question were stamped with the September 5, 1978, primary-election stamp, rather than the November 7, 1978, general-election stamp, the ballots were not stamped with the official stamp as required by law and therefore, pursuant to Section 16–13–01, N.D.C.C., cannot be counted.[7] He relies on a series of decisions of this court that have indicated that a ballot not stamped and initialed as required by statute cannot be counted. We will briefly examine the facts in those decisions.

In *Miller v. Schallern*, 8 N.D. 395, 79 N.W. 865 (1899), the ballots in question were not initialed and the court held they could not be counted. *Howser v. Pepper*, 8 N.D. 484, 79 N.W. 1018 (1899), involved ballots neither stamped nor initialed. *Perry v. Hackney*, 11 N.D. 148, 90 N.W. 483 (1902), which cited *Miller v. Schallern, supra*, with approval, considered not the stamping and initialing of ballots, but rather voting booths that did not meet statutory requirements. *Weber v. O'Connell, supra*, and *Kuhn v. Beede, supra*, concerned absent-voter ballots that were not stamped with any stamp nor initialed by an inspector or judge of election. *Torkelson v. Byrne, supra*, involved ballots that were not stamped and initialed in any manner at the time they were given to the elector but were stamped and initialed after having been removed from the ballot box for the purpose of canvassing.

We are aware of no case in which this court has held that a general-election ballot stamped with an official stamp of the primary election for that precinct and properly initialed is void.

While this court in the above-cited decisions has held the requirement of stamping and initialing of a ballot to be mandatory in order that the ballot be valid, such holdings do not resolve the issue present herein. All election statutes are mandatory "in the sense that they impose a duty of obedience upon those who come within their purview." *Perry v. Hackney, supra*, 11 N.D. at 155, 90 N.W. at 485. Yet this court has used the term "mandatory" in another way to describe the effect that irregularities on a ballot have on the validity of that ballot. If the Legislature has established statutory ballot requirements but has failed to delineate the consequences of noncompliance with those requirements, this court has looked to the intent and purpose of the statutes to determine whether or not such noncompliance should render a challenged ballot void. If such noncompliance defeats the intent and purpose of the statute, this court has called the statute "mandatory" and has held that the ballot is void [see, e. g., *Grubb v. Dewing*, 48 N.D. 774, 187 N.W. 157 (1922)]; on the other hand, if the deviation from the statute is minor and in no way frustrates the intent and purpose of the statute, this court has called such statute "directory" and has held that the irregularity does not affect the validity of the ballot [see, e. g., *Mittelstadt v. Bender*, 210 N.W.2d 89 (N.D. 1973); *Perry v. Hackney, supra* ].

But if the Legislature has expressly declared that failure to comply with the ballot statute is fatal, the court has used the term "mandatory" to explain that substantial deviation from the statutory requirements, such as the omission of required endorsements, renders the ballot void. See, e. g., *Kuhn v. Beede, supra*, and cases cited therein. Even in this situation, however, the court has held that to comply with a "mandatory" statute, only "substantial compliance"—not strict and literal compliance—must be present. When a ballot is in substantial compliance with a mandatory statute, this court has held that the ballot is valid if the substantial compliance has effectuated, rather than hindered, the attainment of the purposes of the ballot statute. *Fuerst v. Semmler*, 28 N.D. 411, 149 N.W. 115 (1914).

Through Sections 16–12–04 and 16–13–01, N.D.C.C., the Legislature has expressly

---

7. The only distinction between the official stamp for the primary election and the general election was the date, i. e., the primary-election stamp carried the date of September 5, 1978, and the general election stamp the date of November 7, 1978. The primary stamp used on the 35 ballots carried the name of the correct precinct.

stated its intent to render void any ballot not containing the proper endorsements, that is, the stamp of the official stamp and initials of an inspector or judge of election. This court has recognized that intent on numerous occasions in the cases previously reviewed herein. Yet this court has never required, as Morgan would now have us do, strict compliance with endorsement requirements. In every case decided by this court that Morgan cites to support his argument, either the official stamp, the initials of an election official, or both, were entirely omitted from the disputed ballots. In other words, in those cases there was no compliance, either strict or substantial, with the endorsement provisions, and the purpose of the endorsement provisions, i. e., authentication of ballots as official, was not achieved. Those cases therefore are not authority for the holding Morgan would now have us adopt.

Morgan also cites *Evans v. Reiser*, 78 Utah 253, 2 P.2d 615 (1931), as authority for his contention that a ballot which has been stamped with an improper stamp is void and cannot be counted. An examination of that case, however, indicates that some 571 ballots were challenged, 9 of which were marked with letters and 562 of which were marked with figures. After a lengthy opinion discussing the validity of those ballots, the Utah court stated:

"Before concluding this opinion there are two other matters which deserve brief mention. The ballot which is marked as Exhibit D was cast by an absent voter in election district 179. The ballot was marked as the official ballot for district 177. That ballot was marked in a manner not authorized by law. We have held that it should be rejected. Under such circumstances it is not necessary to further discuss that ballot." 78 Utah at 293, 2 P.2d at 631.

Apart from that paragraph, there is no explanation of the facts or discussion of the Utah statutes relevant to such ballots. Upon examination of the Utah statutes then in effect, however, we note that Section 2217, Compiled Laws of Utah, 1917, provided, in part:

". . . No ballot furnished by the proper officer shall be rejected for any error in stamping or writing the indorsements thereon by the officials charged with such duties, nor because of any error on the part of the officer charged with such duty in delivering the wrong ballots at any polling place, but any ballot delivered by the proper official to any voter shall, if properly marked by the voter, be counted as cast for all candidates for whom the voter had the right to vote, and for whom he has voted."

In view of that statutory provision, the lack of discussion by the Utah court of the relevant facts or statutes concerning those particular ballots, and the apparent insignificance of those ballots to the final election results, we cannot accord the statement of the Utah court the significance Morgan places thereon.

A case more instructive is *Fuerst v. Semmler, supra*, cited by the district court to support its refusal to invalidate the 35 disputed ballots, and by Dotzenrod in this proceeding. In *Fuerst*, the contestant challenged the validity of, among others, five ballots because, although they contained initials of the name of the inspector of election, the initials were placed on them not by the named inspector, but by one of the judges of election at the inspector's request. Dismissing the challenge, this court stated:

". . . It must be conceded, we think, that the object of the statute, which was the prevention of fraudulent voting, was accomplished as effectively in the one case as in the other, but counsel argue that the statute is mandatory and requires a strict and literal compliance with its terms. While the statute is no doubt mandatory in so far as it requires authentication in the mode provided in section 640, R.C. 1905, we cannot believe the Legislature in enacting section 648, providing that, 'In the canvass of the votes, any ballot which is not indorsed as provided in this chapter by the official stamp and initials, shall be void and shall not be

counted,' intended to visit such consequences where, as in the case at bar, a substantial compliance with the prior section had been observed. To attribute to the Legislature such an absurd intent is equivalent to attributing to it an intent to lay a trap for the unsuspecting and good-faith voter which he is almost certain to be caught in, and whereby his vote may, at the behest of dishonest or careless election officials, be held for naught. The object sought to be attained by such statute does not require or justify us in giving it any such strict and literal construction." 28 N.D. at 422–423, 149 N.W. at 119–120.

Also challenged in *Fuerst* were certain ballots that allegedly contained the official stamp from the wrong precinct. Before the election, through a questionable procedure, the board of county commissioners consolidated two voting precincts, Nos. 3 and 15, for the primary election. Even though the consolidated precinct was denominated precinct No. 3, the County Auditor delivered two official stamps, one for precinct No. 3 and the other for precinct No. 15, to the inspector of election. During the election, therefore, election officials stamped the ballots of voters residing in what had been precinct No. 3 with the stamp of that precinct and those ballots of voters residing in what had been precinct No. 15 with the official stamp of that precinct. Although the court did not consider the legality of the precinct consolidation and found alternative grounds for upholding the validity of the challenged ballots, it noted that if the consolidation was valid, and, as a result of such consolidation all of the ballots should have been stamped with the official stamp of precinct No. 3, the ballots with the stamp from precinct No. 15 were nonetheless valid because:

". . . it was a mere irregularity which should not vitiate the election. *Miller v. Shallern* [*sic*], 8 N.D. 395, 79 N.W. 865, is not in point. That was a case where no initials whatever were placed on the ballots, and they were in no way thus authenticated as official ballots.

"Although the statute requiring such authentication of the ballots is mandato-ry, a literal compliance therewith is not exacted. A substantial compliance was observed and this is all that was required. While, no doubt, it was the elector's duty to see that his ballot was authenticated in substantial conformity to the statute, it would be an exceedingly harsh and needless rule that would require that he should, at the peril of having his vote not counted, see that the statute had been literally observed by the election officers." 28 N.D. at 420, 149 N.W. at 118–119.

Thus, in *Fuerst*, even though some of the ballots were endorsed with a stamp not strictly and literally in compliance with the predecessors of the statutes that we apply today, this court upheld the validity of the ballots because "substantial compliance was observed." Likewise, here, 35 ballots were stamped with a stamp not strictly and literally in compliance with Section 16–11–11, N.D.C.C., because the stamp contained the wrong election date. Yet it was conceded by Morgan that this stamp was the primary-election stamp for that precinct, that the initials on the 35 ballots were the initials of the general-election officials of that precinct, and that the 35 ballots were the ballots prescribed for the general election. Hence, just as in *Fuerst*, the stamp was in substantial compliance with the endorsement requirements and, more important, when combined with the initials of the election official of that precinct, served to provide sufficient authentication of the ballots. We therefore must reject Morgan's objection and uphold the validity of the 35 ballots challenged in this proceeding.

Lest it be argued that this decision will encourage fraud on the part of election officials, we note that Section 16–01–17, N.D.C.C., provides, in part:

"Election offenses–Penalty.–It shall be unlawful for a person to:

"1. Fraudulently alter another person's ballot or substitute one ballot for another, or to otherwise defraud a voter of his vote."

See also *Kuhn v. Beede, supra*, 249 N.W.2d at 236.

Because of our decision in these matters we find it unnecessary to consider the objections raised by Dotzenrod for the first time in his brief to this court concerning ballots that the district judge ordered not to be counted for various reasons and that Dotzenrod contends should have been considered valid ballots.

## CONCLUSION

The provisions of Sections 16–12–04 and 16–13–01(1), N.D.C.C., are held to be not applicable to absent-voter ballots counted pursuant to Section 16–18–14, N.D.C.C., and, under the facts of this case and for the reasons above stated, the 35 challenged ballots are held to be valid.

The relief requested in Morgan's petition is denied.

ERICKSTAD, C. J., PAULSON, J., and DOUGLAS B. HEEN and A. C. BAKKEN, District Judges, concur.

HEEN and BAKKEN, District Judges, sitting for PEDERSON and SAND, JJ., disqualified.

PAULSON, J., participating on the briefs.