Thomas R. HUNTLEY, Contestant
and Appellant,

v.

Mike TIMM, Dave Senger, Ward County
Auditor, and the Ward County Recount
Board and its members, Eldore Leier,
Tom Slorby, and Jim Lee, Contestees
and Appellees.

Civ. No. 890017.

Supreme Court of North Dakota.

Feb. 8, 1989.

Pringle & Herigstad, P.C., Minot, for contestant and appellant; argued by John J. Petrik.

Kenner Law Firm, P.C., Minot, for contestee and appellee Mike Timm; argued by Harris P. Kenner.

Tom P. Slorby, State's Atty., Minot, for contestees and appellees Dave Senger, et al. No appearance.

ERICKSTAD, Chief Justice.

Thomas R. Huntley appeals from a district court judgment dismissing, on its merits, Huntley's contest of Mike Timm's election to the House of Representatives for the Fifth Legislative District in Minot. We affirm.

The facts of this case are undisputed. Huntley and Timm were candidates for the legislative seat during the November 8, 1988 election. The Ward County Canvassing Board determined that Timm had been elected by a three vote margin over Huntley. The State Canvassing Board and the Secretary of State ordered a recount which resulted in the Ward County Recount Board certifying Timm the winner by a final tally of 3,600 votes for Timm and 3,599 votes for Huntley.

In dispute on this appeal are five ballots which were excluded by the recount board.

Each of the five excluded ballots contained the official election stamp bearing the mark of the appropriate precinct but none of them contained the initials of an election official, and for that reason they were excluded during the recount. Of the five excluded ballots, four votes were cast for Huntley and one vote was cast for Timm.

The sole issue raised on appeal is whether the recount board erred in refusing to count the five ballots which were not initialed by an election official. Huntley asserts that the ballots should have been counted, because under current law an uninitialed ballot is not invalid if it has been properly stamped. We disagree.

> Section 16.1–13–22, N.D.C.C., provides: "Failure to stamp and initial a ballot or ballot card in the proper place does not invalidate such ballot or ballot card, but a complete failure to stamp and initial a ballot or ballot card does invalidate the ballot or ballot card."

That section, enacted in 1981, amended the language of Section 16–12–04, N.D.C.C., which provided:

> "Failure to stamp and initial a ballot in the proper place on the ballot shall not invalidate such ballot but a failure to stamp and initial a ballot at any place on a ballot shall invalidate the ballot."

Under the amended 1981 version of the provision the word failure is prefaced by the term "complete" and the phrase "at any place on a ballot" has been deleted. Huntley asserts that the Legislature, in making this change, intended that a ballot would be invalid only if there was a complete failure to both stamp and initial it. Huntley asserts that ballots which have been stamped but not initialed, as occurred on the five excluded ballots in this case, should not be invalidated because there has not been a "complete" failure to stamp and initial them. Timm asserts that the Legislature, in amending the provision, intended to codify this court's rationale in *Morgan v. Hatch,* 274 N.W.2d 563 (N.D.1979), that a ballot is valid if there has been substantial compliance with the statutory requirement that it be both stamped and initialed. Timm asserts that the failure to either stamp or initial a ballot constitutes a complete failure to meet the endorsement requirements under the statute and thereby invalidates the ballot.

■ ■ The interpretation of a statute is a question of law fully reviewable by this court. *Rocky Mountain Oil & Gas Assoc. v. Conrad,* 405 N.W.2d 279 (N.D.1987). The primary objective in interpreting a statute is to ascertain and give meaning to the intent of the Legislature. *Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124 (N.D.1987). The trial court, having examined the legislative history to the enactment of Section 16.1–13–22, N.D.C.C., stated that it "finds nothing which would indicate the intent of the Legislature in making the change." Neither party on appeal nor this court has found any helpful legislative history regarding the relevant amendment.

In *Miller v. Schallern,* 8 N.D. 395, 79 N.W. 865 (1899), the court held that a ballot which contained an official stamp but did not contain an election official's initials was invalid and could not be counted. The court in that case explained the rationale underlying the requirement that all official ballots must be both stamped and initialed as a prerequisite to counting them:

> "[T]he legislature of this state, following the lead of many older states, where the matter had received long and conscientious consideration, has seen fit to adopt what is known as the 'Australian Method' of regulating the elective franchise. As we have said, the characteristic and distinctive feature of this system is an official ballot. The state charges itself with the responsibility of furnishing the elector with such ballot, and in doing so announces to him in explicit terms that no other ballot can be placed in the ballot box or counted by the canvassers. In furtherance of this policy laws have been passed which are designed to place in the hands of every voter a genuine official ballot.
>
> \* \* \* \* \* \*
>
> "The capital purpose of these statutes, manifestly, is to provide the voter with an official ballot, and to enable him to make sure that he gets such ballot. Pro-

vision is made, not only that an official shall deliver such ballot to the voter, but, with the same purpose in view, the law requires the official to indorse the ballot so delivered, not merely with an official stamp, with which he is provided, but with his own initials as well. This legislation, therefore, places it within the power of every voter to determine whether a ballot which is handed to him by a precinct officer is or is not an official ballot. If it is not stamped and initialed as the statute directs, it is not an official ballot, and hence cannot lawfully be voted, or, if voted, cannot be lawfully counted.... The state has therefore safeguarded the privilege of voting and the purity of elections." *Miller, supra,* 79 N.W. at 867-868.

The requirement that an official ballot must be both stamped and initialed was reaffirmed in *Weber v. O'Connell,* 55 N.D. 867, 215 N.W. 539 (1927), and in the subsequent case of *Torkelson v. Byrne,* 68 N.D. 13, 276 N.W. 134 (1937). The rationale underlying *Weber* and *Torkelson* was followed by this court in *Kuhn v. Beede,* 249 N.W.2d 230 (N.D.1976), a case in which this court held that absent voters' ballots failing to carry an endorsement of both an official stamp and initials are void and cannot be counted.

In *Morgan v. Hatch,* 274 N.W.2d 563 (N.D.1979), this court held that substantial compliance, rather than strict and literal compliance, with the endorsement requirement was sufficient to render a ballot valid and countable if that compliance effectuated the purpose of the ballot statute. However, in so holding, this court recognized that a failure to either stamp or initial a ballot constitutes noncompliance with the endorsement provisions resulting in an invalid ballot:

"[T]he Legislature has expressly stated its intent to render void any ballot not containing the proper endorsements, that is, the stamp of the official stamp and initials of an inspector or judge of election. This court has recognized that intent on numerous occasions in the cases previously reviewed herein. Yet this court has never required, as Morgan

would now have us do, strict compliance with endorsement requirements. In every case decided by this court that Morgan cites to support his argument, *either the official stamp, the initials of an election official, or both, were entirely omitted from the disputed ballots. In other words, in those cases there was no compliance, either strict or substantial, with the endorsement provisions,* and the purpose of the endorsement provisions, i.e., authentication of ballots as official, was not achieved." [Emphasis added.] *Morgan, supra,* 274 N.W.2d at 568-569.

This century old requirement that a ballot, in order to be valid and countable, must be endorsed with both an official stamp and initials, remains as a codified part of our law under Section 16.1-15-01, N.D. C.C.:

"... In the canvass of the votes at any election, a ballot shall be void and shall not be counted if:

"1. It is not endorsed with the official stamp and initials as provided in this title...."

If the Legislature intended to change the endorsement requirement to include either an official stamp or an election official's initials, but not both, it could have easily and clearly so stated under this provision. It has not done so.

■ We believe that a reasonable interpretation of Section 16.1-13-22, N.D. C.C., does not change the endorsement requirement that both the stamp and initials must be affixed to a ballot for it to be valid and countable. By adding the term "complete" and deleting the phrase "at any place on a ballot" the Legislature merely intended to clarify, in our opinion, that improper location of the endorsement on the ballot will not invalidate the ballot nor will the ballot be invalidated if there has been a substantial compliance in both stamping and initialing the ballot. We conclude that in amending the provision the Legislature intended that a failure to either stamp the ballot or to initial the ballot would constitute a "complete failure to

stamp and initial" the ballot, thereby invalidating it.

■ Section 16.1–13–22, N.D.C.C., also provides that the inspector or judge delivering the ballot "shall inform each elector that if the ballot is not stamped and initialed by an election official it will be invalidated" and that "the elector should verify that the ballot has been stamped and initialed." The stipulated facts indicate that in this case the election officials "may have not orally advised every single voter that if their ballots were not stamped and initialed, that it would not be counted." Huntley asserts that under these circumstances the five ballots should be counted. We disagree.

The election officials should have made certain that each elector was orally advised of the stamping and initialing requirement. Nevertheless, we believe that the electors were adequately apprised of the stamping and initialing requirement by other means. It is undisputed that both sides of each elector's ballot stated "all ballots other than those used to vote absentee, must be stamped and initialed by appropriate election official in order to be counted." In addition, voting instructions were posted which stated that a ballot which is not stamped and initialed by an election official would be invalidated. A conspicuous yellow and black poster was also displayed at the polling place informing voters that "STATE LAW SUGGESTS YOU VERIFY YOUR BALLOT HAS BEEN STAMPED AND INITIALED." We conclude that the electors were adequately apprised of the stamping and initialing requirement and that each elector had an adequate opportunity to verify whether his or her ballot was an official ballot, properly endorsed. The record does not support a contrary contention.

In accordance with this opinion the judgment of the district court dismissing Huntley's claim on its merits is hereby affirmed.

VANDE WALLE, GIERKE and LEVINE JJ., concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

LEVINE, Justice, specially concurring.

I often wonder about the truth of rules of interpretation that courts indulge in, such as "the legislature does not do idle acts" or "the legislature is assumed to know the law." This case vindicates my skepticism.

"Clarifying" a statute by amendment in order to incorporate a decision of this court belies both the purposefulness and knowledge we blithely ascribe to the legislature by our reliance on such rules of interpretation. However, I agree that one hundred years of precedent should be unambiguously overruled if that indeed is the legislature's purpose in enacting or amending a statute. Absent that clear expression of legislative purpose in NDCC § 16.1–13–22, I agree with the majority's resolution of this case.

VANDE WALLE, J., concurs.

VERNON R. PEDERSON, Surrogate Justice, dissenting.

I read the majority opinion as confirming the existence of ambiguity and confusion in the language used by the legislature in the election laws, thus requiring judicial construction. Language construction by the courts, in cases such as this, without the benefit of any meaningful legislative history, should be guided by a desire to avoid any possibility of unjustified disenfranchisement of voters. The precedent afforded by previous cases decided by this court, under different statutory language, should be disregarded when it results in depriving voters of their right to participate in democracy through no fault of their own.

I would reverse the judgment.